WILLIAM R. PATTANGALL *vs.* JOHN A. MOOERS.

Kennebec. Opinion July 6, 1915.

*Candidates for Office. Criticism. Defamatory Language. False Statements.*
*Good Faith. Justification. Malice. Privileged Statements.*
*Public Men. Reputation as an Attorney at Law.*
*Rumors. Slander.*

1. If slanderous words, whether written or oral, directly tend to the prejudice or injury of one in his profession, trade or business, they are actionable.

2. When the defamatory words spoken have such a relation to the profession or occupation of the plaintiff that they directly tend to injure him in respect to it, or to impair confidence in his character or ability, when from the nature of the business great confidence must necessarily be reposed, they are actionable, although not applied directly by the speaker to the profession or occupation of the plaintiff.

3. It is the law that when a person becomes a candidate for a public office, his qualifications and fitness for that office may be freely and fully discussed, commented on and criticised by any member of the community having an interest in the matter.

4. The conduct and actions of such candidate may be canvassed, discussed and boldly criticised. Even his faults and vices, in so far as they necessarily affect his fitness for the office, may be investigated and commented on.

5. His private character, however, is only put in issue so far as his qualifications and fitness for the office may be affected by it. He does not, by becoming a candidate for office, surrender his private character to false accusations. It would not serve the public good to have falsehoods concerning him disseminated among the people.

6. Such comment and criticism may be harsh, severe and unnecessarily acrimonious, but so long as it is made in good faith, without express malice, it is privileged in law, and therefore not actionable.

7. The law tolerates such comment and criticism of public men and candidates for public office upon the theory that it is for the public good to do so, to the end that the people may learn the truth as to the qualifications and fitness of candidates for office, and become informed of the manner those in office are discharging the duties of the office, thereby being better qualified to intelligently exercise the elective franchise.

8. The law does not justify, under the guise of qualified privilege, a false, defamatory statement of specific acts of misconduct concerning a candidate for office. While the publication of the truth respecting him may be justified, the publication of defamatory falsehoods will not be.

On exceptions by the defendant.    Exceptions overruled.

This is an action on the case to recover for slander for certain oral statements by the defendant, of and concerning the plaintiff, intending thereby to injure him in his reputation and good name as an attorney at law.    The defendant plead the general issue, and in addition thereto filed a brief statement in which he says, that whatever words may have been spoken of the plaintiff by defendant were not spoken of the plaintiff concerning his business or profession as an attorney at law.

The jury rendered a verdict for plaintiff for $279.25, and the defendant excepted to the exclusion of certain testimony offered by him, to the refusal of the court to give certain instructions to the jury and to certain portions of the charge to the jury, all of which are fully considered in the opinion.

The case is stated in the opinion.

*George W. Heselton, and Pattangall & Plumstead,* for plaintiff.

*Fred E. Lawrence,* for defendant.

SITTING: SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

KING, J.    This is an action for slander for certain oral statements by the defendant, alleged to be false and defamatory, and to have been made maliciously concerning the plaintiff, with intent to injure him in his good name and reputation as an attorney at law, and likely to so injure him.    The alleged slanderous statements were made on the 12th day of August 1913 at Skowhegan, Maine, first to one Fisher, and afterwards on the same day repeated to one Adams.    At that time the plaintiff was one of three candidates, nominees of three political parties, for the office of Representative to Congress from the Third Maine Congressional District, the election to which office was to be held about a month later.    The defendant and both Fisher and Adams were electors in that District.    Mr. Fisher's version of what the defendant said to him concerning the plaintiff is this: "Why, he went on to tell me about the bill that the labor unions was trying to get passed through the Legislature so if they got injured in any corporation or firm, was the way I understood it, that they should have compensation, if they got hurt in any way, and they went to Mr. Pattangall and asked him what he would put the bill

through for and he said $500. And then the corporations goes to Mr. Pattangall and asked him what he would defeat it for and he said $500. So he gets $1000 and defeats the bill."

Mr. Adams' version of the defendant's statement to him is substantially the same as that of Fisher, except that he adds that the defendant said, "and that is your Mr. Pattangall." And the defendant testified: "I told Mr. Fisher that, as I understood it, there was a bill, one of the worthiest bills, as I said to him, that was before the last Legislature. And I explained to him somewhat the nature of the bill, and I said to him that as I heard it Mr. Pattangall was engaged upon one side or the other, and that later he took a retainer from the opposite side, whatever it was I didn't know, and received money from both sides, and I told him that was just how I heard it."

His version of what he later said to Mr. Adams is: "I repeated to him, as near as I could tell you now, the exact words, substantially the words that I told Mr. Fisher. Mr. Adams said to me, 'John, you wouldn't say that about Mr. Pattangall if it was not so?' or something to that effect. I said, 'I hope you don't think I am that kind of a man.' I think that is all there was said that I remember."

It appears from the foregoing testimony that there was no material controversy as to that part of the defendant's statement which is claimed to be defamatory of the plaintiff. He admits saying that the plaintiff, having accepted money for his services and influence in securing the passage through the Legislature of the Workmen's Compensation Act, also accepted a retainer from the opponents of the Act. There appears to be some difference between the testimony of the plaintiff's witnesses and that of the defendant as to whether he made the defamatory statement concerning the plaintiff as a fact of his own knowledge, or as a rumor that he had heard. He claimed the latter. But on cross-examination, Mr. Fisher was asked, "You understood that he told it to you as something he knew personally?" And he answered, "yes sir, he didn't explain anything about anybody to me." Mr. Adams' testimony on that point was to the same effect. And the defendant does not claim that at the time he made the statement complained of he gave the name of his informant of the rumor, if such it was. The plaintiff recovered a verdict of $279.25, and the case comes up on defendant's exceptions to the exclusion of certain testimony, to the refusal of certain instructions, and to the giving of certain other instructions.

No attempt was made to justify the defendant's statement concerning the plaintiff by proving its truth, and accordingly it must be regarded as false. If it was but the repetition of something he had heard about the plaintiff, he did not give the name of his informant; but the evidence was sufficient to justify the jury in finding that the defendant made the statement as a fact within his own knowledge, and not as a rumor. What was the statement? How was it to be interpreted as applied to the plaintiff? The evidence shows that the plaintiff had been a qualified attorney at law for about twenty years, commanding an extensive practice throughout the State. He had frequently been employed professionally to appear before committees of the Legislature to present and advocate, or to oppose, proposed legislation. He had served as Attorney General for the State, had been a member of the Legislature during four of its sessions, and had been mayor of the City of Waterville for three terms, ending in March, 1914. Defamatory language is to be interpreted as it would naturally be understood by the hearers of it, taking into consideration accompanying explanations and the surrounding circumstances known to the hearers. It cannot be reasonably questioned that Fisher and Adams, to whom the defendant made the slanderous statement complained of, understood from it that the plaintiff had been employed and paid as an attorney for the labor unions to advocate the enactment of the Workmen's Compensation Act, and that he was guilty of most culpable dishonesty towards his employers, and had basely betrayed their trust and confidence in him by accepting a retainer from the opponents of the Act and using his influence to defeat it. If slanderous words, whether written or oral, directly tend to the prejudice or injury of one in his profession, trade or business they are actionable. And when the defamatory words spoken have such a relation to the profession or occupation of the plaintiff that they directly tend to injure him in respect to it, or to impair confidence in his character or ability, when, from the nature of the business great confidence must necessarily be reposed, they are actionable, although not applied directly by the speaker to the profession or occupation of the plaintiff. 25 Cyc., 328. The slanderous statement complained of directly tended to injure the plaintiff in respect to his profession and occupation. If believed it could have no other effect than to destroy all trust and confidence in him as an attorney. We

entertain no doubt, therefore, that the defendant's false statement concerning the plaintiff was actionable per se, independent of the question of privilege.

But the defendant claimed and undertook to maintain at the trial that his statement to Fisher and Adams concerning the plaintiff was within the qualified privilege accorded to voters in discussing the qualifications and fitness of a candidate for an elective public office. Therein is involved the important and fundamental question raised by the exceptions.

It is the law everywhere that when a person becomes a candidate for a public office his qualifications and fitness for that office may be freely and fully discussed, commented on and criticised by any member of the community having an interest in the matter. Such comment and criticism may be harsh, severe and unnecessarily acrimonious, but so long as it is made in good faith, without express malice, it is privileged in law, and therefore not actionable. The law tolerates such comment and criticism of public men and candidates for public office upon the theory that it is for the public good to do so, to the end that the people may learn the truth as to the qualifications and fitness of candidates for office, and become informed of the manner those in office are discharging the duties of the office, thereby being better qualified to intelligently exercise the elective franchise.

But the authorities are not in accord on the question, whether this privilege to make fair comment and criticism of public men and candidates for public office includes the right to make false defamatory statements concerning them.

One view or rule is to the effect that while fair comment and criticism respecting the qualifications and fitness of candidates for office may be privileged, false defamatory statements of fact concerning them are not within the privilege. This limited rule may be more fully expressed as follows: One who becomes a candidate for election to an office in the gift of the people thereby puts in issue before them his abilities, qualifications and fitness for that office. And any voter or other person having an interest in that election may fully and freely comment on and criticise his talents and qualifications, mentally and physically, for the office he seeks. The conduct and actions of such candidate may be canvassed, discussed and boldly criticised. Even his faults and vices, in so far as they necessarily affect his fitness for the office, may be investigated and commented on. His private

character, however, is only put in issue so far as his qualifications and fitness for the office may be affected by it. He does not by becoming a candidate for office surrender his private character to false accusation. The public have an interest to know the truth respecting the qualifications and fitness of a candidate for office. But it would not serve the public good to have falsehoods concerning him disseminated among the people. And, therefore, the law does not justify, under the guise of qualified privilege, a false defamatory statement of specific acts of misconduct concerning a candidate for office. While the publication of the truth respecting him may be justified, the publication of defamatory falsehoods will not be. More than a century ago Parson, C. J., in *Com.* v. *Clap*, 4 Mass., 163, 169, said that, "the publication of falsehood and calumny against public officers, or candidates for public office, is an offence most dangerous to the people, and deserves punishment, because the people may be deceived, and reject the best citizens, to their great injury, and it may be the loss of their liberties." In Newell on Slander and Libel, page 568, the author says: "It is one thing to comment upon or criticise, even with severity, the acknowledged or proved acts of a public man, and quite another to assert that he has been guilty of particular acts of misconduct. To state matters that are libelous is not comment or criticism." Speaking on this subject, Mr. Cooley says: "A candidate for public office does not surrender his private character to the public, and he has the same remedy for defamation as before; and the publication of false and defamatory statements concerning him, whether relating to his private character or public acts, is not privileged."

This limited rule, which excludes from the doctrine of qualified privilege false defamatory statements concerning candidates for public office, is supported by the great weight of authority. See 25 Cyc., 403. We also call particular attention to a note to *Black* v. *State Co.*, reported in Ann. Cas. 1914C., page 997, where numerous cases are cited in many jurisdictions supporting the limited rule. The following are but a few of those citations, but they show how extensively this rule is recognized. *Post Pub. Co.* v. *Hallam*, 59 Fed., 530, 16 U. S., App. 613; *Dauphiny* v. *Buhne*, 153 Cal., 757, 96 Pac., 880; *Star Pub. Co.* v. *Donahue*, (Del.) 58 Atl., 513; *Jones* v. *Townsend's Adm'x*, 21 Fla., 431, 58 Am. Rep., 676; *Rearick* v. *Wilcox*, 81 Ill., 77; *Burt* v. *Advertiser Newspaper Co.*, 154 Mass., 238; *Hubbard* v.

*Allyn,* 200 Mass., 167; *Com.* v. *Pratt,* 208 Mass., 553; *Belknap* v. *Ball,* 83 Mich., 538, 47 N. W., 674, 11 L. R. A. 72; *Smith* v. *Burns,* 106 Mo., 94, 13 L. R. A., 59; *Hamilton* v. *Eno,* 81 N. Y., 116; *Post Pub. Co.* v. *Maloney,* 50 Ohio St., 71, 33 N. E., 921; *Upton* v. *Hume,* 24 Ore., 420, 33 Pac., 810; *Tiepke* v. *Times Pub. Co.,* 20 R. I., 200; *Brewer* v. *Weakley,* (Tenn.) 2 Overt. 99; *Nichols* v. *Daily Report Co.,* 30 Utah, 74, 83 Pac. 573; *Williams Printing Co.* v. *Saunders,* 113 Va., 156, 73 S. E., 472; *Sweeney* v. *Baker,* 13 W. Va., 158, 31 Am. Rep., 557; *Ingalls* v. *Morrissey,* 154 Wis., 632, 143 N. W., 681.

The other and more liberal view, which has the sanction of considerable authority, holds that a charge made against a candidate for public office is privileged regardless of the fact that the charge is a false statement of fact, provided the person making it acts in good faith, without malice, believing the charge to be true with reasonable and probable ground for such belief. Authorities supporting this rule will also be found cited in 25 Cyc., 403, and in the note to *Black* v. *State Co.,* supra.

It is claimed in behalf of the defendant that the more liberal rule should have been applied to his statement concerning the plaintiff complained of in this case. That although the statement was false and defamatory yet if he made it in good faith, without express malice toward the plaintiff, in an honest belief in its truth, to persons interested in the subject matter of the statement, it was privileged. He contends that there are decisions of this court sustaining his position. We do not think so. In *Bearce* v. *Bass,* 88 Maine, 521, the comment and criticism complained of referred solely to the character of the plaintiffs' work and materials used in constructing a public building. The court there held the language complained of to be well within the general rule of privilege, being only a fair and reasonable criticism upon the work which entered into the construction of a public building, and constituting no attack upon the character of the plaintiffs either as individuals or in their business as contractors. It is true that the court there in commenting on the doctrine of privilege said: "In regard to matters of public interest, all that is necessary to render the words privileged is, that they should be communicated in good faith, without malice, to those who have an interest in the subject matter to which they refer, and in an honest belief that the communication is true, such belief being founded on reasonable and probable grounds. In such cases, the occasion rebuts the inference

of malice, which the law would otherwise draw from unauthorized communications, and affords a qualified defense depending upon the absence of malice. If fairly warranted by any such occasion or exigency as we have named, and honestly made, upon reasonable grounds, such communications are protected for the common protection and welfare of society." We do not think that statement of the rule of qualified privilege was intended by the learned Justice who wrote that opinion to be interpreted so as to include, as privileged communications, false charges against a candidate for office of crimes, or of specific acts of dishonesty in his business or profession, or false accusations affecting his private character, even where the other elements of privilege are shown. If such is the necessary interpretation of the language there used, then we think it should be modified somewhat. But in that case the only question before the court was whether certain criticism of the work and materials that entered into the construction of a public building was privileged as fair comment. That case is in no sense comparable to the .case at bar. There the language complained of was but the opinion of the writer as to the quality of the plaintiffs' work and materials. Here the words spoken constitute an unqualified charge against the plaintiff of specific dishonesty in his profession, and it had a direct tendency also to injure him in his private character.

Of the other decisions of this court to which our attention has been called by defendant we need not here make special comment. It is true that in some of them there are general expressions of much the same import as that above quoted from *Bearce* v. *Bass.* We do not here decide that in no instance may the publication of a false statement concerning a candidate for office be justified under the doctrine of qualified privilege, which would otherwise be actionable. We are not now called upon to determine whether the doctrine of qualified privilege may not be a good defense in an action for oral slander, of a candidate for an elective office, if the spoken words, though false and actionable per se, were but the repetition in good faith of what had been uttered by some other person whose name was given at the time, the other essential elements of privilege being shown. That is not this case. But we are constrained to the conclusion that the law does not justify any one in publishing a false charge of specific acts of culpable dishonesty against a candidate for office which directly tends to injure him in his profession and occupa-

tion, or to defame his reputation for honesty and integrity. That conclusion accords with reason and the great weight of judicial precedent. Its application will promote the public welfare by restricting the spread of falsehood and calumny, always too readily believed, and protecting the reputation and character of individuals from being unjustifiably and wantonly assailed. The law not only protects the person and property of the citizen, but vigorously guards as equally sacred his personal reputation and character. And we hold that the defendant's statement concerning the plaintiff, complained of in this action, being a false and specific charge of dishonesty towards those who had employed him, and which charge necessarily tended to injure his reputation for integrity in his profession, was not within the doctrine of qualified privilege. It was an unauthorized defamatory statement, and the law implies that it was maliciously made and therefore actionable.

The conclusion we have reached renders it unnecessary perhaps to discuss in detail the specific exceptions, for they all chiefly rest upon the defendant's proposition that the alleged slanderous statement was privileged.

1. On cross examination the plaintiff was asked, if during the primary campaign of 1913 he had occasion to remonstrate against a certain editorial in the Independent Reporter at Skowhegan, and he replied that he did for the reason that he conceived it to be an unjust attack upon him. He was then asked the nature of that editorial and was not permitted to answer.

The object of the inquiry, as stated by counsel for defendant, was to show that the editorial was a reflection upon the personal reputation of the plaintiff and to rebut malice upon the part of defendant. It was competent for the defendant to introduce evidence, in mitigation of damages, that the plaintiff's general reputation as a man of moral worth was bad, and also that his general reputation was bad with respect to that feature of character covered by the defamation in question. *Sickra* v. *Small*, 87 Maine, 493. But the rule is too well established to admit of doubt that the general reputation of a person is to be proved by the oaths of witnesses who know what that general reputation is, and not by evidence of specific accusations of misconduct against the person, or of general rumors of ill-repute concerning him. *Powers* v. *Cary*, 64 Maine, 9, 16; *Peterson* v. *Morgan*, 116

Mass., 350; Wigmore on Ev., V. 1, Sec. 74. Whatever may have been the nature of the editorial it was clearly incompetent as evidence on the question of the plaintiff's general reputation. Nor was it admissible to rebut malice.

2. There was no error in the rulings, which are made the subject of exceptions III, IV, and V, excluding inquiries as to specific rumors or reports respecting the plaintiff similar to the slanderous statements complained of. The object of the inquiries was to rebut malice, but the presumption of malice arising from the publication of a false defamatory charge is not rebutted by proof that the publisher had reason to believe the charge was true. Accordingly evidence of similar rumors or reports respecting the plaintiff were inadmissible. It was so expressly held in *Powers* v. *Cary,* 64 Maine, 9, 16.

3. That portion of the charge, which is made the subject of exception VI, was in substance and effect an instruction to the jury that if they found that the defendant's statement concerning the plaintiff was properly understood by those to whom it was made as applying to the plaintiff in his profession and business, then, if it was false, it was actionable per se, because the law implies that there was malice on the part of the defendant in making it. And that is the equivalent of an instruction that it was not a privileged communication, the same conclusion that we have hereinbefore expressed.

4. Exception was taken to the following instruction: "Every man has a right to honestly and truthfully comment, rehearse and recite, privately and publicly, the truth about any man or person. Public interest demands that public affairs should be freely commented upon, and that the qualifications of candidates for office should be fairly, openly and honestly discussed, immunity should be and is granted to comments and discussions of this nature. But this immunity does not extend, either in reason or by law, to protect false statements maliciously made, untruthful accusations wilfully uttered, for the purpose of character injury, or false charges of dishonesty in a man's profession or business, or made with a total and reckless indifference as to its truth or falsity, with a desire and a design to injure him."

The defendant has no reasonable ground for his exception to that instruction. It was as favorable to the defense, we think, as the law would allow.

5.  The defendant complains that three of his requested instructions were not given as requested.  We will here consider all his requests and the rulings thereon in the order as presented and disposed of at the trial.

No. 1.  "It is for the jury to say whether the words spoken by the defendant were spoken of and concerning his profession as an attorney at law."  As to this the court said:  "I think I have covered that point.  You are to construe the words spoken at that time as those two witnesses had a right to construe them, taking their every-day, common meaning, and what was the meaning conveyed to their minds and what meaning do the words convey to your mind."  This of course, was not excepted to, but we refer to it here because it is important to be considered in connection with the rulings on the other requests.  There can be no doubt that the jury understood from this request of the defendant, and the instruction given thereunder, that it was an important question in the case for them to decide, whether the words spoken by the defendant were spoken of and concerning the plaintiff in his profession as an attorney at law.

No. 2.  "It is not sufficient to establish the foregoing contention that the effect of the words spoken would be to injure a professional reputation; it must also appear that the words were spoken with direct reference to the profession."  This request was properly refused.  Defamatory words may be such and so spoken that they naturally convey to the hearers a meaning applicable to the profession of the person of whom they are spoken, although no such reference thereto is directly made by the speaker.  And we have already pointed out that when defamatory words directly tend to injure the profession or occupation of him of whom they are spoken they are actionable although not directly applied by the speaker to the profession or occupation of the plaintiff.

No. 3.  "The fact that the plaintiff was a candidate for Congress renders the communication, if made with reference to such candidacy, qualifiedly privileged; and the plaintiff can only recover by showing actual malice."  No. 4.  "The plaintiff can not recover if the defendant spoke the words in question in good faith, with reference to the plaintiff's said candidacy, in an honest belief of their truth based upon reasonable and probable cause."  We have quoted these two requests together because they convey substantially the same idea.  As to the last one quoted the court said:  "And you have heard the testimony,

and the arguments of counsel upon that request. It is for you to say, gentlemen, under the instructions I have given you, how those words and for what purpose they were spoken." This statement of the court again emphasized to the jury that the vital question in the case was, whether the words as spoken naturally conveyed to the hearers thereof the meaning that they were spoken concerning the plaintiff in respect to his profession, and that the determination of that question was solely for the jury to decide. And we think the jury must have clearly understood that if they did not find that the words were spoken of the plaintiff in respect to his professional conduct, then he could not recover. Accordingly we are of opinion that there was no reversible error in the refusal of those requests in view of the other instructions already given and the added qualification and explanation made in connection with the refusal.

No. 5. "Actual malice implies a desire and intention to injure." This was given. "And a mere desire to defeat a man's candidacy for public office is not a desire and intention to injure him within the rule stated." As to this the court said: "I cannot give you the last part of that instruction as requested. As I said before, if you find that there was actual malice, and that those words were spoken of him and were an injury to him in his business, then the plaintiff may recover." Earlier in the charge the court instructed the jury as to actual malice, and pointed out to them that it was evidenced by the acts or words of the party chargeable with malice, and he particularly called their attention to the respective contentions of the parties as to the evidence in the case bearing on the issue of actual malice of the defendant in speaking the slanderous words. We think there was no error in the ruling as to this requested instruction.

6. That instruction which is made the subject of exception XII was entirely in harmony with the law applicable to this case as we have hereinabove stated it.

Finding no reversible error in any of the rulings complained of, the entry will be,

*Exceptions overruled.*