MARTIN A. BEATTY v. RANDOLPH K. ELLINGS AND OTHERS.*

173 N. W. (2d) 12.

December 12, 1969—No. 41315.

*Certified to the United States Supreme Court March 26, 1970.

*Martin A. Beatty,* pro se, and *Ben R. Toensing,* for appellant.

*C. Stanley McMahon,* for respondents Housing & Redevelopment Authority of Winona, Chamber of Commerce, and their officers and employees.

*Streater, Murphy & Brosnahan,* for respondents City of Winona, the news media, and their officers and employees.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

PETERSON, JUSTICE.

The issues in this appeal arise out of an action by plaintiff, Martin A. Beatty, pleading separable causes of action against numerous defendants, public bodies and public officials for the most part, tied together by an allegation that they maliciously conspired to defame him and deny his civil rights. The trial court granted summary judgment of dismissal for the defendants except only as to isolated claims against three individuals. Plaintiff has appealed of right from the summary judgment against him, and the three remaining defendants have petitioned for discretionary review of the judgment with respect to them.

This litigation is an outgrowth of a long-standing and vigorous public controversy over urban renewal and redevelopment in Winona, Minnesota. Defendants, either as public officials or interested private persons, have been proponents of urban renewal. Plaintiff, a resident of Winona, has been an active opponent of these public programs, perhaps in part because he is, as his complaint discloses, the owner of an affected building. The present litigation, considered in the context of that controversy,[1] compels a conclusion that the claims of plaintiff are without substantial merit and, except as to certain claims not dismissed by the trial court, do not warrant extended discussion.

1.   Plaintiff's basic claim of a conspiracy among these numerous defendants is, as the trial court found, clearly without substance. The voluminous pretrial discovery proceedings evince the fullest opportunity for plaintiff to uncover the existence of a conspiracy. All that appears, however, is the obvious fact that defendants shared a common interest in urban renewal and were not favorably disposed to plaintiff's activities in opposition. A natural community of interest among participating proponents in a public debate, including agreement among public officials for the adoption of a particular program, forms no rational basis for any inference that an affront by any of them to their common opponent occurred pursuant to a conspiracy to degrade him or deny him his civil rights.

2.   Plaintiff's claim that he was denied his civil rights, alleged at length in the prolix pleadings, is generally an assault upon the "illegal and improper" proceedings of the city council and public agencies interested in urban renewal. The trial court carefully considered these allegations, together with the most extensive files, depositions, and exhibits relating to them. It concluded that

---

[1] This controversy has been here before upon plaintiff's appeal from an order dismissing his action for a declaratory judgment invalidating action of the Winona City Council creating the Winona Housing and Redevelopment Authority. See, Beatty v. Winona Housing & Redevelopment Authority, 277 Minn. 76, 151 N. W. (2d) 584.

each of these claims was without substance as a matter of fact and as a matter of law. We agree and think no useful purpose could be served by a reiteration of the trial court's comprehensive opinion.

3. Plaintiff makes several claims against different defendants for defamation arising out of meetings of various public bodies considering the subject of urban renewal. Two of these, alleged as libel,[2] were dismissed by the trial court and we affirm without detailed discussion. Three of these, alleged as slanders, were not dismissed by the trial court:

(a) At a meeting of the Winona Planning Commission on December 23, 1965, defendant Jerry Papenfuss, one of the commissioners, became engaged in heated argument with the plaintiff as the result of plaintiff's accusations against the defendant Randolph K. Ellings, then mayor of Winona. Papenfuss referred to plaintiff three times as a "son-of-a-bitch," prefaced by certain other adjectives.

(b) At a meeting of the city council on June 15, 1964, de-

---

[2] One alleged libel consisted of a news item in the Winona Daily News on August 20, 1965, which reported a speech by plaintiff, in which he charged that "city planning consultants" had concocted a "scheme" for urban renewal. The defendant newspaper added a paragraph reporting the comments of unnamed redevelopment "officials" that plaintiff's claims as to the cost of such scheme were "unfounded."

The other incident alleged by plaintiff as a libel occurred on March 15, 1966, following a speech by plaintiff at a meeting of the city council, in which he charged that members of the housing and redevelopment authority had given information to some persons from which they had reaped private profit. On the following day defendant William O. Finkelnburg, chairman of the authority, with the assistance of its legal counsel, dictated a statement to the counsel's secretary and subsequently read it at a meeting of the authority that same evening. Finkelnburg labeled plaintiff's charges as "irresponsible, inconsistent attacks on the plan or upon the character and honesty of public officials" and deplored the "fact that Mr. Beatty feels it necessary to stoop to this shameful tactic." The statements were published in the defendant public media.

fendant Ellings allegedly responded to the unfounded accusation of plaintiff that the council had conducted secret meetings with these words: "You are a liar." And, at a meeting on September 8, 1964, again as part of a heated exchange, Ellings suggested to plaintiff that they could settle their differences in the adjoining alley, which plaintiff took to mean that the debate would be resolved by fisticuffs. The trial court, in denying Ellings' motion for summary judgment, referred only to the second incident, terming it "a slanderous, or possibly a threatened, assault." [3]

(c) The third alleged slander involves statements made to plaintiff by defendant Joseph E. Krier, vice chairman of the Winona Housing and Redevelopment Authority, at its meeting on July 21, 1964. This meeting was held in a room at the Winona National and Savings Bank, of which Krier was a vice president. Plaintiff, in a letter to Arthur A. Gallien, executive director of the authority, had protested the practice of meeting at that time and place, urging that meetings be held in the municipal building and at an hour more convenient to those wishing to attend. Plaintiff did attend the meeting, and at that time and place, as alleged in the complaint, Krier spoke these words to plaintiff in the presence of Gallien:

"What are you doing here?"

"Why aren't you at your office? You must not have any law business that you can spend all of your time attending meetings."

"You are hurting yourself."

---

[3] It is most doubtful that these words constitute an assault and, in any event, that aspect of the alleged tort is, under all the circumstances, de minimis. At the time defendant Papenfuss had labeled plaintiff as a son-of-a-bitch, he had added, "I ought to throw you out the window!" Plaintiff at that time instituted a criminal complaint against Papenfuss for disorderly conduct, which resulted in an acquittal after a 2-day jury trial. Plaintiff instituted no such proceedings against defendant Ellings. These incidents do, of course, reveal the verbal pyrotechnics in this controversy.

"You have lost a great many friends."

"You are fighting a lost cause and you should have sense enough to know it."

"Do you know what you are doing?"

"I think you ought to see a psychiatrist." [4]

Plaintiff, notwithstanding his allegations that the statements of defendant Krier were inherently defamatory, republished the event himself. He visited the office of E. L. King, chairman of the bank's board, the same day and reported "what had gone on and how [he] had been slandered," and on July 22 he sent King a letter to "serve as a memo of my conversation of yesterday afternoon with you at your office." [5] On November 14, 1964, plaintiff wrote a similar letter to the members of the city council and the members of the housing and redevelopment authority. He also sent copies of the letter to the 450 resident members of the Winona Chamber of Commerce. [6] If the letter

---

[4] Defendant Krier added these words: "Who's behind this? Does your wife put you up to this?" Plaintiff pleads as the innuendo of these latter words "that plaintiff was dominated by his wife." We think the important issue of defamation relates only to the suggested need for psychiatric consultation. Our disposition of that issue, in any event, equally disposes of any suggestion that this aggressive plaintiff was wife-dominated.

[5] The letter in part read as follows: "I explained that I was protesting the conduct and slanders of Mr. Krier. I stated that such conduct was calculated to discourage me from attending future meetings. I commented on the fact that Mr. Krier is an officer of your bank. I also told you that I did not think that Mr. Krier would have dared to make such remarks without the knowledge of the other bank officers. I explained that a further purpose of my visit was to insure that no officer or employee of your bank would try to discourage me from attending such public meetings at your bank in the future."

[6] This letter in part states: "The meetings of the Winona Housing and Redevelopment Authority are held once a month at 1:10 P.M. on Tuesday, when citizens are necessarily at work. They are held in a small cubicle-sized roomlet, in a private building, the Winona National & Savings Bank. A citizen who has the audacity to squeeze into this

was not a total reiteration of the allegedly slanderous statements, it was otherwise remarkable for its absence of reference to them.[7]

We have determined to exercise discretionary review in this case even though appellate review of orders denying motions for summary judgment will be granted only in most unusual situations. See, Rule 105.01, Rules of Civil Appellate Procedure. The surviving claims against these three individual defendants are but the tag ends of plaintiff's actions against the numerous other defendants rather similarly situated. The issues arise out of the same public controversy and involved utterances of public officials in the course of public meetings relating to that controversy. The trial of these isolated claims might well necessitate long and expensive trial proceedings, an unwarranted imposition upon both litigants and the public in view of our conclusion that plaintiff's claims are as a matter of law without substantial merit.[8] We are convinced that the interest of justice will best

---

meeting can expect to be as grossly abused as he would be at a City Council Meeting. He can expect, for example, that Mr. Joe Krier, the Vice-chairman of this public body, which chooses to function as an oligarchy, will inquire:

" 'What are you doing here?'

" 'Why aren't you at your office?'

"He can anticipate that Mr. Krier will slander him, and make insulting remarks about a member of his family and about his professional competence."

[7] Plaintiff's letter to King contains all of Krier's alleged statements as printed in the complaint, *supra,* except that the remarks relating to defendant's wife were simply summarized as "insulting remarks about my wife," in sharp contrast to the allegations of the complaint that it was a reflection upon plaintiff himself. Plaintiff's more widely circulated letter of November 14, however, omitted reference to Krier's statement about plaintiff's need to see a psychiatrist.

[8] Discretionary review in such a case was granted in Time, Inc. v. McLaney (5 Cir.) 406 F. (2d) 565, under the somewhat comparable provisions of 28 USCA, § 1292(b), for discretionary review by the United States Court of Appeals within the Federal system. Plaintiff,

be served by dismissal of the entire litigation and remanding plaintiff to his original forum of public debate.

We hold that the words spoken by the three defendants, even assuming that they were defamatory, are not actionable. Not all abusive or vulgar epithets, we observe in passing, are inherently defamatory. Calling a man a "son-of-a-bitch," unworthy as it is in public debate, could not reasonably be construed as an actual reference to his ancestry or even as to his general character. Calling a man a "liar" may in many situations reflect upon a man's character, but it is not necessarily so; it is at least no different than labeling an unfounded accusation as a "lie." An invitation to an alley fight would not in any setting constitute slander. To suggest that a man should seek psychiatric advice, spoken in the context of his activities in connection with an urban renewal controversy, does not necessarily connote an accusation by the speaker that he is insane.[9] We need not decide, however, whether these words were nondefamatory as a matter of law, because they are, for other and more basic reasons, not actionable.

First, slander is not actionable without allegation and proof of damage unless the defamatory words are actionable per se. Defamatory words spoken concerning a professional man are not actionable per se unless spoken with direct reference to his professional activity.[10] Plaintiff did allege that Ellings' refer-

---

questioned on oral argument as to his position on the question of discretionary review, interposed no objection to it.

[9] Calling a person "insane" undoubtedly could be considered defamatory if used in the sense of being mentally disordered or incapable of functioning competently, but to label an activity or idea as "insane" is probably no more than a figure of speech characterizing the activity or idea as foolish or ridiculous.

[10] See, McDermott v. Union Credit Co. 76 Minn. 84, 78 N. W. 967, 79 N. W. 673, and High v. Supreme Lodge, 214 Minn. 164, 7 N. W. (2d) 675, 144 A. L. R. 810. See, also, Gurtler v. Union Parts Mfg. Co. 285 App. Div. 643, 140 N. Y. S. (2d) 254, affirmed, 1 N. Y. (2d) 5, 150 N. Y. S. (2d) 4, 132 N. E. (2d) 889; Fitzgerald v. Young, 89 Neb. 693, 132 N. W. 127; Barry

ence to him as a liar and Krier's reference to him as needing psychiatric consultation were damaging to him "both professionally and otherwise"; but as to all other spoken words he alleged only that they were damaging to his "reputation." The statements of Ellings and Krier were no more directed to plaintiff's professional activity than were those of any other of the defendants. Whatever the sufficiency of the requisite allegations as to damage, there is utterly no evidence of such damage. Plaintiff admitted in a discovery deposition that his law practice had not suffered as the result of any act of defendants.[11]

Second, and more important, the allegedly slanderous words were conditionally privileged, in a constitutional sense, so that plaintiff, as a public figure, could recover only upon pleading and proving that the words spoken or written concerning him were the product of actual malice. New York Times Co. v. Sullivan, 376 U. S. 254, 84 S. Ct. 710, 11 L. ed. (2d) 686, 95 A. L. R. (2d) 1412; Associated Press v. Walker, 388 U. S. 130, 87 S. Ct. 1975, 18 L. ed. (2d) 1094; St. Amant v. Thompson, 390 U. S. 727, 88 S. Ct. 1323, 20 L. ed. (2d) 262.[12] To defeat that

v. Baugh, 111 Ga. App. 813, 143 S. E. (2d) 489; Sweeney v. Philadelphia Record Co. (3 Cir.) 126 F. (2d) 53; Taylor v. American Export Lines, Inc. (S. D. N. Y.) 222 F. Supp. 1022. But cf. Pattangall v. Mooers, 113 Maine 412, 94 A. 561, L. R. A. 1918E, 14; Sweeney v. Schenectady Union Pub. Co. (2 Cir.) 122 F. (2d) 288; Remington v. Bentley (S. D. N. Y.) 88 F. Supp. 166; Munafo v. Helfand (S. D. N. Y.) 140 F. Supp. 234.

[11] He does assert that the expenses of his prior litigation, footnote 1, *supra,* constituted a special damage. Obviously these are neither special damages nor expenses attributable in any way to the alleged slanders in the instant case.

[12] Plaintiff was obviously a "public figure," as the trial court found. The record discloses that at the time plaintiff commenced these actions he had attended almost every formal meeting of the city council since the middle of 1963. He addressed these council meetings on several occasions, and on some of these occasions his public statements were reported in the local media. He attended meetings of two other public bodies interested in urban renewal, the planning commission and the housing and redevelopment authority. And he insisted upon attending

privilege, it was incumbent upon plaintiff to plead and prove, as to each statement, that the statement was false and that it was written or spoken "with knowledge that it was false or with reckless disregard of whether it was false or not," New York Times Co. v. Sullivan, 376 U. S. 254, 279, 84 S. Ct. 710, 726, 11 L. ed. (2d) 686, 796, 95 A. L. R. (2d) 1412, 1435—that is, that the defendant "in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U. S. 727, 731, 88 S. Ct. 1323, 1325, 20 L. ed. (2d) 262, 267.[13] Plaintiff generally alleged that the defamatory words were "maliciously" spoken, but that is not a sufficient pleading of constitutional malice. More importantly, there was no evidence of such actual malice.[14] The trial court in denying defendant's motion for summary judgment stated that "a possible question of privilege would be for the jury." But the question of privilege exists as a matter of law.

The judgment is affirmed in so far as it directs dismissal of any of plaintiff's actions; reversed in so far as it directs trial of plaintiff's actions against defendants Ellings, Krier, and

---

a meeting of such private body as the Winona Chamber of Commerce when, on one occasion, its meeting was attended by members of the city council and the housing and redevelopment authority. His views questioning or opposing proposed urban renewal projects were also conveyed by letter to various state and Federal officials. In the words of Associated Press v. Walker, 388 U. S. 130, 155, 87 S. Ct. 1975, 1991, 18 L. ed. (2d) 1094, 1111, he had become such by the "thrusting of his personality into the 'vortex' of an important public controversy."

[13] The focus is on the status of plaintiff as a public figure and not on the status of the defendants. A somewhat similar focusing on the status of the defendants exists for statements made by members of municipal councils or other governing bodies of political subdivisions in the course of public proceedings, Jones v. Monico, 276 Minn. 371, 150 N. W. (2d) 213, but the seemingly more sweeping constitutional privilege makes it unnecessary to rest decision on the latter ground.

[14] It might be inferred that the statements of defendants Papenfuss and Ellings demonstrated some ill will. And plaintiff asserts that the

Papenfuss; and is remanded with directions that summary judgment for those defendants be entered.

Affirmed in part; reversed in part; and remanded, with directions.

Upon petition for rehearing, the opinion in the above matter filed on November 7, 1969, is withdrawn and the above opinion substituted in lieu thereof. The petition is denied.

---

words of defendant Krier were spoken "angrily and sarcastically" (although defendant Krier asserted that they were spoken as an expression of genuine personal concern). Mere proof of personal ill will, at least without more, as we observed in Rose v. Koch, 278 Minn. 235, 154 N. W. (2d) 409, does not meet the constitutional standard of actual malice. Cf. Goldwater v. Ginzburg (2 Cir.) 414 F. (2d) 324.