Michael L. HIRMAN, et al., Respondents,

v.

John ROGERS, Appellant,

County of Meeker, Appellant,

Norman Olson, Defendant.

No. 46760.

Supreme Court of Minnesota.

Aug. 12, 1977.

Hulstrand, Anderson & Larson, and Ronald C. Anderson, Willmar, John H. Bradshaw, Eden Valley, for Rogers.

Thomas D. Nagel, County Atty., Litchfield, for County of Meeker.

William B. Haas, Hutchinson, for respondents.

Heard before PETERSON, MacLAUGHLIN, and PLUNKETT, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, Justice.

The issue in this case is whether as a matter of law the evidence was insufficient to justify submitting to a jury the question of whether certain statements made by defendant John Rogers, sheriff of Meeker County, were made with actual malice, that is, with knowledge of their falsity or with a reckless disregard of whether the statements were false or not. Because we hold the evidence was insufficient, we reverse.

A jury found two statements made by Rogers were false, libelous, and made with actual malice. The jury awarded $3,000 in compensatory and punitive damages to each of three plaintiffs who had alleged defamation. This appeal followed denial of an alternative motion for judgment notwithstanding the verdict or for a new trial.

At the time of the incident out of which this action arose, plaintiff Michael Hirman, a former deputy sheriff of Meeker County, and plaintiff Charles Schrum were employed as police officers by the city of Litchfield. Plaintiff Ruth Johnson was a deputy sheriff and radio dispatcher who worked in the Meeker County sheriff's office.

During 1974, Rogers became aware of security problems in the sheriff's office because of the removal of certain records from the premises and the disappearance of daily reports and log sheets. The Minnesota Bureau of Criminal Apprehension was contacted in an effort to tighten office security and, pursuant to their recommendations, Rogers placed all of the confidential files in an area within his private office, and behind doors kept locked during the evening hours. Further, Rogers assigned a new deputy, Mary Kalkbrenner, to the task of organizing and maintaining the files.

Rogers became alarmed when he arrived for work one morning and was informed by Kalkbrenner that the locked door leading to the secured area had been opened. In September, Rogers had the locks on this door changed but subsequently there was evidence that the new lock assembly had been tampered with and the striker plate bent. A nail was then placed in the door jamb to prevent insertion of any object which might trip the latch on the locked door.

As Rogers became increasingly concerned about office security, he decided to conduct surveillance in an effort to discover who had attempted to enter the secured area. On November 3, Rogers went out of town but directed his deputy, Kalkbrenner, to conceal herself behind the locked door for observation of activity in that part of the sheriff's office located outside of the secured area. From approximately 4 p. m. on the afternoon of November 3 until almost 4 a. m. on the morning of November 4, Kalkbrenner hid behind the locked door with a tape recorder, a pencil and notepad, and a small pocket mirror with which she could observe part of the outer office through the space beneath the door.

At midnight on November 4, deputy sheriff Ruth Johnson came on duty as a radio dispatcher, unaware of Kalkbrenner's presence only a few feet away. Subsequently, the police department in the nearby city of Watkins called Johnson, requesting use of the Meeker County Breathalyzer machine

to check the alcohol levels of three suspects in custody. Johnson called Hirman and Schrum, on duty with the Litchfield Police Department, and asked them to administer the tests. When Hirman and Schrum arrived at the sheriff's office they found the Breathalyzer machine was not working properly and advised the Watkins police to take the suspects to the local hospital for blood testing.

Shortly thereafter, Hirman and Schrum went to the locked door leading to the corridor where Kalkbrenner was hiding, and the door was then shaken vigorously for almost 10 seconds. Kalkbrenner overheard Hirman explain to Schrum that he could open the locked door by inserting a credit card or driver's license between the door and the casing. Hirman saw that a nail had been placed in the door to prevent tripping the latch and told Schrum that, except for the nail, the card could be inserted. Schrum stated that they would "have to work on that." Kalkbrenner, from her position behind the locked door, recorded the conversation and sounds of door rattling and took notes of the activity. Soon thereafter, Hirman and Schrum left the sheriff's office and Kalkbrenner ceased her surveillance.

After Rogers' return that afternoon, Kalkbrenner told him of the events of the previous night and Rogers heard the tape recording and read Kalkbrenner's notes. The following day, November 5, Rogers summoned Norman Olson, a county commissioner, Vernon Madson, mayor of Litchfield, and George Fenner, Litchfield chief of police, to hear the tape recording. After interviewing Ruth Johnson, Rogers discharged her from her position as deputy sheriff.

Olson and Rogers agreed to withhold any information about the incident pending the election returns that night. At 2 a. m. on November 6, after the returns were in and Rogers had been reelected as sheriff, Rogers issued a written press release to the Willmar West Central Daily Tribune. The newspaper's report stated:

"Sheriff's Office Break-in Foiled At Litchfield"

"LITCHFIELD—Meeker County Sheriff John Rogers issued a prepared statement about 2 a. m. today (Wednesday), noting that, 'An attempt at an illegal entry was made at approximately 2 a. m. on Nov. 4, into the private offices of the Meeker County Sheriff by two officers of the Litchfield Police Department with the sheriff's office dispatcher present.

'At this time, the dispatcher, whose employment has been terminated today, has admitted to being present with the two police officers at the time of the attempted illegal entry.' "

Later that day, during a telephone interview with radio station KLFD, Rogers repeated in substance the statement published in the press release:

"Q. Monday morning you had a break-in over there? [To which John Rogers replied], A. Attempted illegal entry is what it was. Q. So, it was attempted illegal entry, can you give us the details on it? A. There is not much I can say at this time. There is going to be an investigation on this. There was one of our employees here that was involved, a dispatcher, and she is no longer with us, she was terminated, well, in fact, yesterday. Q. This was two members of the local police department? A. Right. And, this information was brought to the attention of the Mayor and also the Chief of Police and I am in no position to tell them what to do. It is up to them to take care of their men; I feel some of this stuff has been going on in the past, and I am just getting sick of it and something is going to have to be done about it. Q. This would obviously be some sort of serious offense? A. This is right. I don't know what the intentions were or what the deal is, but there is going to be an investigation as far as I am concerned."

These two statements were the sole basis of plaintiffs' claims against Rogers.

After several meetings between Litchfield and Meeker County officials, Robert LaMettry of the Minnesota Bureau of Criminal Apprehension was called in by the county attorney's office to conduct an in-

vestigation. A grand jury was convened to consider several matters, including the incident in the sheriff's office, but the grand jury did not bring any charges against plaintiffs and the grand jury report was sealed and filed by order of the district court.

Subsequently, plaintiffs commenced this action against several defendants, including various news media which had republished Rogers' written and oral statements. None of the news media remained as defendants at the time of the trial.

The trial court denied defendants' motion for dismissal, and the jury, by a ⅚ special verdict, awarded $1,500 in compensatory damages and $1,500 in punitive damages to each plaintiff against Rogers. The trial court denied defendants' motion for judgment notwithstanding the verdict or, alternatively, for a new trial, and this appeal followed.

Defendants contend that the trial court should have granted their motion for a dismissal. The sole issue we consider on this appeal is whether plaintiffs offered any evidence to prove that Rogers' statements were made with actual malice so that the case should properly have been submitted to the jury in the first instance.

■ Where plaintiffs in a defamation action perform governmental duties, directly related to the public interest, they are public officials and, as such, fall squarely within the "actual malice" requirement set forth in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). See, also, Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). The parties and the trial court were in accord that Hirman and Schrum, as police officers, and that Johnson, as deputy sheriff, were "public officials."[1] See, Mahnke v. Northwest Publications, Inc., 280 Minn. 328, 160 N.W.2d 1 (1968); Time, Inc. v. Pape, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971); St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

The New York Times rule severely limits the right of a public official, such as the plaintiffs in this case, to recover damages for a defamatory falsehood relating to his official conduct without proof that "the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. 279, 84 S.Ct. 726, 11 L.Ed.2d 706. See, Mahnke v. Northwest Publications, Inc. supra.

■ In a defamation action brought by a public official who falls within the constitutional constraints of the New York Times rule, actual malice may never be presumed. The burden of proving actual malice is upon the one alleging defamatory statements and it must be proved with convincing clarity. Rose v. Koch, 278 Minn. 235, 154 N.W.2d 409 (1967).

■ We have defined actual malice as more than mere negligence and probably even more than highly unreasonable conduct. Rose v. Koch, supra. Mere errors in judgment are not sufficient to constitute actual malice and a defamatory statement must have been made with an awareness of its probable falsity, as demonstrated by "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267. It is not enough for a public official to show that the defendant has acted from personal ill-will but rather he must prove that the publication was made with a high degree of awareness that it was probably false. Standke v. B. E. Darby & Sons, Inc., 291 Minn. 468, 193 N.W.2d 139 (1971); Beatty v. Ellings, 285 Minn. 293, 173 N.W.2d 12 (1969), certiorari denied, 398 U.S. 904, 90 S.Ct. 1694, 26 L.Ed.2d 63 (1970). See, also, Time, Inc. v. Pape, supra; Beckley Newspapers Corp. v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967).

---

1. The plaintiffs have not attempted to distinguish Johnson's position as a plaintiff, or her role in the events comprising the basis for the lawsuit, from that of Hirman and Schrum, and consequently, we make no distinction among the plaintiffs in our resolution of this case.

In the instant case we have concluded that plaintiffs did not demonstrate by convincing proof that Rogers had entertained serious doubts as to the truth of his statements at the time they were made or that he had a high degree of awareness of their probable falsity. Rather, plaintiffs relied upon extensive evidence of the long-standing animosity between the Meeker County sheriff's office and the Litchfield Police Department, evidence of ill-will between Rogers and Hirman, and testimony to show that the three plaintiffs had supported Rogers' opponent during the sheriff's bid for reelection. These factors in themselves are not sufficient to carry the burden of proof required of plaintiffs in this defamation action.

The statements by Rogers referred to an "attempt" at an "illegal entry" into his private offices by two members of the local police department with the sheriff's office dispatcher present at the time. Plaintiffs did not deny that they were present at the time of the incident and testified that they could not remember whether or not they had shaken the door. However, the tape recording of the incident, played at trial and made part of the record on appeal, clearly demonstrates that plaintiffs discussed opening the locked door with a card and that the door was shaken vigorously for almost 10 seconds. Therefore, it cannot be said that Rogers' statements were unfounded.

Moreover, Litchfield Mayor Madson, called by defendants as an adverse witness, admitted that after he heard the tape and talked with Rogers, Kalkbrenner, and the police officers, he had reached the conclusion that the two officers had attempted to enter the secured area on the night in question by using a credit card to trip the lock. County Commissioner Olson also testified that in his judgment the officers' act was in violation of the law and admitted having told the Litchfield newspaper, in effect, that the average person who heard the tape would be "convinced that there was an overt effort to illegally enter the Sheriff's office." Robert LaMettry of the Minnesota Bureau of Criminal Apprehension gave testimony that he did not think the sheriff had been "going out of his way to do something other than to conduct a normal investigation."

Although an "illegal entry" is not specifically defined in our statutes, it is obvious that one who enters a building by virtue of his status as a licensee or as an invitee does not have access to those portions of a building which are secured for the express purpose of excluding the public. Although the police officers entered the sheriff's outer offices at the request of the dispatcher, there was no consent to any attempted entry into the secured area. At the very least a reasonable person could believe that the attempt to open the locked door was in excess of the police officers' lawful authority and beyond the scope of their official duties. Therefore, Rogers' statements concerning this conduct, based upon all of the circumstances, were not so unreasonable as to constitute evidence from which a jury could find either knowledge of their falsity or a reckless disregard for the truth on the part of Rogers.

A motion for dismissal made in a jury case is tested by the same standards as a motion for a directed verdict which presents only a question of law for the trial court relating to the sufficiency of the evidence to create a fact question for the jury. *Usher v. Allstate Insurance Co.,* 300 Minn. 52, 218 N.W.2d 201 (1974); *J. N. Sullivan & Assoc. v. F. D. Chapman Const. Co.,* 304 Minn. 334, 231 N.W.2d 87 (1975). Since plaintiffs offered no evidence to prove that Rogers' statements were made with knowledge of their falsity or with reckless disregard of whether the statements were false or not, the trial court should have found for defendants. We hold that Rogers' statements, as a matter of law, were not made with "actual malice."

Reversed.