In the Matter of the CONTEST OF GEN-
ERAL ELECTION Held ON NOVEM-
BER 8, 1977, for the Purpose of Electing
a Council Member for the Third Ward
of the City of St. Louis Park, County of
Hennepin, State of Minnesota.

Ethel GRAVES, contestant, Respondent,

v.

Keith MELAND, et al., contestees,
Appellants.

No. 48551.

Supreme Court of Minnesota.

March 24, 1978.

John A. Miller and Paul D. Sabby, Minneapolis, for appellant.

DeParcq, Anderson, Perl, Hunegs & Rudquist, Richard G. Hunegs and Peter W. Riley, Minneapolis, for respondent.

PETERSON, Justice.

■ Contestant, Ethel Graves, brought this action to contest the November 8, 1977, election of the incumbent, Keith Meland, to the office of councilman from the third ward in the city of St. Louis Park. The first phase of the matter was a recount of the ballots, in which the trial court determined that Meland had received a majority of the votes lawfully cast. There being no appeal from that determination, the judgment is to that extent affirmed. The second phase of the matter, the subject of this appeal, involves contestant's complaint that a printed campaign circular prepared and distributed by and on behalf of Meland violated two provisions of the Fair Campaign Practices Act, Minn.St. c. 210A.[1] The trial court concluded that the circular vio-

1. The appeal is from the order for judgment, which is not ordinarily an appealable order, Rule 103.03, Rules of Civil Appellate Procedure. The order for judgment was entered on January 12, 1978; the judgment, from which appeal lies, was filed on January 18, 1978. The time for notice of an appeal to this court in the case of general elections is "no later than ten days * * * after the entry of the determination of the district court in the contest." Minn.St. 209.09. Because of the importance of the issue, we consider the appeal as one of discretionary review under Rule 105, adopted subsequent to our decision in *Slowinski v. Ilse*, 278 Minn. 425, 154 N.W.2d 819 (1967). The dispositive issue in this case does not require examination of the transcript of evidence below, so that the absence of that record is likewise not fatal to the appeal. Accordingly, contestant's motion to dismiss the appeal is denied.

lated §§ 210A.2 and 210A.04, subd. 1, of the Act and that, in the applicable words of § 209.02, subd. 1, the violations were "deliberate, serious, and material." Based on these conclusions, the trial court, pursuant to § 209.07, invalidated the election certificate which had been issued to Meland by the St. Louis Park city clerk and declared the office of third ward councilman vacant. We reverse, with the result that Meland is now the duly elected third ward councilman.

■ The two provisions of the Act which the circular was found to violate provide as follows:

"210A.02 No person or candidate shall knowingly, either by himself or by any other person, while such candidate is seeking a nomination or election, make, directly or indirectly, a false claim stating or implying that the candidate has the support or endorsement of any political party, or unit thereof, or of any organization, when in fact the candidate does not have such support or endorsement."

"210A.04 Subdivision 1. Every person who writes, prints, posts, or distributes, or causes to be written, printed, posted, or distributed, except by broadcasting, any circular, poster, or other written or printed matter containing false information with respect to the personal or political character or acts of any candidate, which is designed or tends to elect, injure or defeat any candidate for nomination or election to a public office, shall be guilty of a gross misdemeanor."

These are criminal statutes, violations of which are gross misdemeanors.[2] Therefore, the rule of strict construction of penal stat-

utes must be applied notwithstanding the civil nature of the proceeding before us. Even in this civil proceeding the consequences of a violation are severe since the decision of the voters is judicially set aside, and under the statute they have no opportunity to vote for a disqualified candidate in an election to fill the vacancy.[3]

The campaign circular which was found to violate these provisions of the Act is a card about 3½ by 9½ inches in size—of which about one-half is text. The first part of the text contains biographical information. The last part of the text is captioned, "Read what others say about Keith Meland—," followed by these quotations:

" ' . . . we are proud of you . . .'

Senator Hubert H. Humphrey

" ' . . . your leadership is badly needed . . .'

Vice President Walter F. Mondale

" ' . . . many people depend on you . . .'

Congressman Bill Frenzel"

The Humphrey and Mondale quotations are excerpts from congratulatory letters they had sent to Meland in November 1973 when Meland was first elected third ward councilman.[4] In that election, Meland had run with the endorsement of the Democratic-Farmer-Labor (DFL) party, but in the 1977 election at issue here the DFL party endorsed the contestant in this action, Ethel Graves. The Frenzel quotation was excerpted from a letter he sent to Meland in early 1975 congratulating him on his election as an officer of a suburban public health nursing association.

2. Section 210A.42 provides: "Any person violating any provisions of sections 210A.01 to 210A.44, except as otherwise provided herein, shall, upon conviction thereof, be guilty of a gross misdemeanor; and no person so convicted shall be permitted to take or hold office to which he was elected, if any, or receive the emoluments thereof." Section 210A.04 repeats that criminal sanction as well.

3. Section 210A.39 provides in part: "A candidate elected to an office, and whose election thereto has been annulled and set aside * * * shall not, during the period fixed by law as the

term of such office, be appointed or elected to fill any vacancy which may occur in such office."

4. The excerpt from Humphrey's letter was verbatim; the excerpt from Mondale's was not. The exact text of the sentence in the Mondale letter from which an edited portion was excerpted was this: "I know how much we need your leadership, and I couldn't be more pleased by your victory." Mondale, of course, was a United States Senator in 1973 and is now the Vice President of the United States.

1. We turn first to the trial court's conclusion that the statements in the circular quoted above falsely implied, in violation of § 210A.02, that Meland was supported or endorsed by the DFL party. Since the circular makes no reference to any political party by name, the trial court's decision rests on its conclusion that Humphrey and Mondale, when designated by name and office only, are "units" of the DFL party for purposes of § 210A.02. We hold otherwise.

■ We construe the critical words of § 210A.02—"political party, or unit thereof" —to mean only organizational units of the party and not any individual member or leader. The definitions provision of the Fair Campaign Practices Act, § 210A.01, subd. 1, provides that words in the Act shall have "the meanings prescribed to them in chapter 200." Section 200.02, subd. 7, defines the words "political party" as "an organization which shall have maintained in the state, governmental subdivision thereof or precinct therein in question, a party organization and presented candidates for election at the last preceding general election * * *." Section 202A.12 vests "final authority over the affairs of each political party" in "the party's state convention" and, subject to that authority, in the party's "state central committee" and, thereunder, in the "state executive committee of the party." Section 202A.13 mandates conventions for "each congressional district and each county or legislative district" in any general election year. And, still further, § 202A.14 prescribes a "party caucus" for every election precinct in every general election year. A "convention" is defined in § 200.02, subd. 17, as "an organized body of delegates representing a political party."

■ These statutorily required conventions, committees, and caucuses are the organizational "units" of a political party to which the legislature referred in § 210A.02 of the Fair Campaign Practices Act. It is clear, therefore, that no individual member of a political party—notwithstanding preeminence of position in the party—may be deemed a unit of a political party or may by personal endorsement commit party support or make a party endorsement. We accordingly hold, as a matter of law, that the excerpted quotations from Mondale and Humphrey were not and could not be endorsements of the Democratic-Farmer-Labor party and that the excerpted quotation of Frenzel was not and could not be an endorsement of the Independent-Republican party. The quotations used by Meland accordingly did not violate § 210A.02 by making "a false claim stating or implying that the candidate has the support or endorsement of any political party, or unit thereof."

■ 2. We turn next to the trial court's conclusion that the portion of the circular quoted above violated § 210A.04, subd. 1, by containing "false information with respect to the personal or political character or acts of any candidate [Meland], which is designed or tends to elect, injure or defeat any candidate for nomination or election * * *." In our opinion, § 210A.04, subd. 1, clearly relates to *defamatory* publications and not merely to self-laudation or dated laudatory comments by others. The language of the statute is plainly aimed at statements with respect to "the personal * * * character or acts" of any candidate, which is the language of defamation.[5] Cf. *The Church of Scientolo-*

---

5. It is not without significance that the original bill, Senate File 954, as well as the engrossed bill, bears the headnote "DEFAMATORY CIRCULARS." We are mindful that headnotes in any edition of the Minnesota statutes "are intended to be mere catch-words to indicate the contents of the section and are not any part of the statute." Minn.St. 648.36. The revisor of statutes publishes the session laws "with suitable headnotes," § 482.07; and he maintains a bill-drafting department which, upon request, drafts or aids in drafting bills for members of the legislature and others, which drafts, subject to the provisions of § 648.36 and if not prohibited by the rules of either house of the legislature, may contain headnotes. Although not a part of the statute itself, its presence in the bill itself is nevertheless intrinsic evidence of the legislative author's own understanding of its purpose and intent. Cf. *In re Estate of Van Sloun*, 199 Minn. 434, 438, 272 N.W. 261, 264 (1937), decided under prior statutes.

*gy v. Minnesota State Medical Assn.*, Minn., 264 N.W.2d 152, filed March 17, 1978; *Beatty v. Ellings*, 285 Minn. 293, 173 N.W.2d 12 (1969), certiorari denied, 398 U.S. 904, 90 S.Ct. 1694, 26 L.Ed.2d 63 (1970). It is, at the least, doubtful that the legislature would have imposed the severe penal sanction of a gross misdemeanor for anything less than defamation without unambiguous language expressing such intent.[6]

Our construction of the statutes mandates that the judgment, to the extent involved in this appeal, be reversed. Whatever misleading implications arise from the contents of Meland's campaign circular, they were not implications of the organizational support or endorsement of any political party and were not defamatory statements or information. Whether or not the circular exhibits the complete candor which should be expected of candidates for public office must ultimately be left to the electorate.

Reversed.

OTIS, Justice (dissenting).

I agree that the prosecution of appellant for violation of Minn.St. 210A.02, under the circumstances of this case, would be a harsh and unjust sanction which the court should not and does not find appropriate. However, this is not a criminal case. The burden of proof is far less onerous, and the necessity for criminal intent is totally absent. Consequently, the rule of strict construction of penal statutes has no application. An affirmance of the trial court's decision annulling the election of Meland cannot, under any conditions, be used as evidence of criminal guilt in this or any other proceeding.

To reverse the trial court, in my opinion, ignores a flagrant violation of the letter and spirit of the Fair Campaign Practices Act and condones a fraud on the electorate. Section 210A.02 prohibits a candidate from knowingly making a false claim implying

indirectly that he has the support of a political party when he does not in fact have such support.

The literature in question said:

"Read what others *say* about Keith Meland—

" '. . . *we* are proud of you . . .'

Senator Hubert H. Humphrey

" '. . . your leadership *is* badly needed . . .'

Vice President Walter F. Mondale" (Emphasis supplied.)

The trial court found as a fact that with respect to the November 8, 1977, election these representations were false and misleading. Those findings are not in dispute. The use of the words "say" and "is" in the present tense was blatantly false since neither Senator Humphrey nor Vice President Mondale, at that election, supported Meland.

The decisive issue is whether the trial court's finding that the candidate's literature *implied* support of the Democratic-Farmer-Labor party is based on adequate evidence. Senator Humphrey and Vice President Mondale were, at the time of the election, the two top leaders of the Minnesota DFL party in prominence and in influence. To ignore the implications of the word "we" in Senator Humphrey's statement, "we are proud of you," particularly in juxtaposition to Vice President Mondale's statement, in my opinion, totally ignores the realities of politics. It would be obvious to the casual reader that the late senator was not speaking just for himself but for the party. No other reasonable inference from the use of the word "we" can be drawn.

All that was necessary to bring these misrepresentations within the purview of § 210A.02 was to show that Meland falsely implied indirectly that the candidate had the support of a political party. To hold

6. The unambiguous language of Minn.St. 609.-77 affords a noteworthy comparison: "Whoever, with intent that it be published or disseminated and that it defame another person, com-

municates to any newspaper, magazine or other news media, any statement, knowing it to be false, is guilty of a misdemeanor."

that this is not such a case is to frustrate the legislative determination that such practices mislead the public and permit close elections such as this one to be won by fraud.

I would affirm the trial court.

IRVINE, Justice (dissenting).

I join in the dissent of Mr. Justice Otis.

ROGOSHESKE, J., took no part in the consideration or decision of this case.