Liston Donneal **BOSCHETTE**,
et al., Plaintiffs

v.

Kenneth **BACH**, et al., Defendants.

Civil No. 93–1528(JP).

United States District Court,
D. Puerto Rico.

Dec. 19, 1995.

Rafael F. Castro Lang, San Juan, P.R., for Plaintiffs.

Luis N. Blanco Matos, San Juan, P.R., for Defendants.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it defendant Evelyn Torres Irizarry's Motion for Summary Judgment (docket No. 104) and plaintiff's Opposition (docket No. 116). Also pending before the Court are Attorney Osvaldo Pérez Marrero's motion to withdraw legal representation (docket No. 91), plaintiffs' opposition to

withdrawal (docket No. 92), and Ms. Torres' request for dismissal of Mr. Buck's counterclaim against her (docket No. 115). For the reasons detailed below, defendant Torres' motion for summary judgment is hereby **GRANTED**. Since the Court grants defendant Torres' motion for summary judgment, the motions to withdraw and for dismissal are **MOOT**. Judgment shall be entered accordingly.

## I. INTRODUCTION

Plaintiffs Liston Boschette, Jr. and Norma Jean Boschette initiated this diversity tort action for damages which allegedly resulted from defendant's harassing telephone calls in which he attempted to extort plaintiffs with respect to certain videos of their son engaging in sexual relations with Nanette Guzmán and Lissette Rodríguez. Defendant Kenny Buck affirms that he made numerous phone calls to the Boschette residence in Fort Myers but denies that he attempted to extort them. Defendant filed a counterclaim and joined Liston Boschette III, Evelyn Torres and Rosaura González Rucci, alleging that the present action is only one instance in a series of acts taken by plaintiffs in concert with the joined parties with the specific purpose of harassing and injuring him. He alleges that joined parties Liston Boschette III, Evelyn Torres and Rosaura González Rucci,[1] individually and in concert with Mr. and Mrs. Boschette, Jr., maliciously instituted criminal proceedings against him and participated/acquiesced/cooperated/conspired in the decision to file the instant case with full knowledge that the allegations contained therein were false or with reckless disregard for the truth. The criminal proceedings referred to in defendant Buck's counterclaim consist of a police report filed by Ms. Torres against Mr. Buck for events that occurred on October 29, 1992. On that date defendant Ken Buck extracted a videocassette from Mr. Liston Boschette III's condominium, where Ms. Torres was residing. At Ms. Torres' request, both Ms. Rosaura González Rucci and Ms. Rodesia Picardo came over to the condominium while Mr. Buck was there. Ms. Torres filed a police report against Mr.

Buck on February 19, 1993, for theft of the videocassette. Ms. González Rucci was named as a witness on the police report.

In her motion for summary judgment, Ms. Torres asserts that Mr. Buck's counterclaim asserts a cause of action under malicious prosecution and that he does not have enough evidence to prove his case against her. Ms. Torres asserts that she alone decided to file a police report against Mr. Buck and that her decision was not influenced by any other person. Moreover, Ms. Torres alleges that the police report accusing Mr. Buck of stealing a video cannot be the basis for a claim of malicious prosecution since Mr. Buck admits he took the tape and therefore the report was necessarily supported by probable cause. Ms. Torres further alleges that Mr. and Mrs. Boschette, Jr. did not consult with her in any way with regard to the instant action against Mr. Buck for harassment and extortion. Ms. Torres submits various affidavits in support of her motion:

1. By Mr. Liston Boschette, Jr. stating that he never discussed with Ms. Torres his desire to stop the harassing phone calls; that he has never discussed his legal matters with her; and that he never discussed, encouraged or conspired with Ms. Torres to file the police report against Mr. Buck.

2. By Mr. Liston Boschette III stating that he never discussed the police report with Ms. Torres and never encouraged her to file it; that he did not know Ms. Rosaura González prior to the filing of the police report against Mr. Buck; and that he never conspired with his parents to file a police report against Mr. Buck.

3. By Mrs. Norma Jean Boschette stating that she had no part in the filing of the police report and did not discuss her professional or personal matters with Ms. Torres. Mrs. Boschette affirms that her only contact with Ms. Torres is by virtue of Ms. Torres' acquaintance with Liston Boschette III.

4. By Ms. Rosaura González Rucci stating that she doesn't know Mr. and Mrs. Boschette, Jr.; that she met Mr. Liston Bos-

---

1. Pursuant to a joint stipulation between Mr. Buck and Ms. Rucci, all claims against Ms. Rucci were dismissed in a partial judgment dated March 9, 1995 (docket No. 111).

chette III after Ms. Torres filed the police report against Mr. Buck; and she did not conspire with any of the Boschettes to file the instant case against Mr. Buck.

5. By Ms. Torres stating that she alone decided to file the police report against Mr. Buck and this decision was not influenced, consulted or encouraged by any other person. Furthermore, she states that Mr. Liston Boschette, Jr. never informed her of any specifics or asked her to participate in any action to be taken against Mr. Buck.

In his opposition, Mr. Buck asserts that there is a material issue of fact as to whether he "stole" the videotape. Mr. Buck asserts that the police report Ms. Torres filed against him can serve as the basis for his allegation of malicious criminal prosecution in that "the allegations of the criminal complaint charge nothing more than theft of garbage" in which Ms. Torres had no interest and hence was without probable cause. Mr. Buck further alleges that Ms. Torres' delay in filing the police report, coupled with Mr. Liston Boschette III's return to Puerto Rico in mid–January 1993, proves that it was joined party Liston Boschette III who urged and instigated Ms. Torres to file the police report.

Mr. Buck submits three documents in support of his opposition:

1. His statement under penalty of perjury that he removed the pertinent video from Mr. Liston Boschette III's apartment on October 29, 1992, with the full knowledge, acquiescence and participation of Ms. Torres and that he believes that both the police report filed against him by Ms. Torres on February 19, 1993, and the instant case were filed at the urging of Mr. Boschette III.[2]

2. A copy of the transcript of the deposition of Mr. Liston Boschette III, in which he states that he was in Calgary, Canada on October 29, 1992, and that he returned to Puerto Rico in mid–January of 1993.

3. A copy of the transcript of the deposition of Ms. Evelyn Torres, in which she states that everyone at Mr. Boschette III's condominium on October 29, 1992, had made a pact that the video was to be destroyed after they viewed it.

## II. UNCONTESTED FACTS

The parties have agreed to the following facts. *See* Second Further Initial Scheduling Conference Order (docket No. 108), defendant's Motion for Summary Judgment, Statement of Uncontroverted Material Facts (docket No. 104), and plaintiff's Opposition, Statement of Uncontroverted Facts (docket No. 116).

1. Before the events which gave rise to this complaint, both Ms. Nanette Guzmán and Ms. Lissette Rodríguez were involved in a physically intimate relationship with Mr. Liston Donneal Boschette III.

2. During the time when Mr. Liston Boschette III was involved in physically intimate relationships with Ms. Guzmán and Ms. Rodríguez, certain videotapes were made of Mr. Liston Boschette III having sexual intercourse with Ms. Guzmán, and some other videotapes were made of Mr. Liston Boschette III having sexual intercourse with Ms. Rodríguez. Four videotapes in which Mr. Liston Boschette appears having sexual intercourse with Ms. Guzmán or Ms. Rodríguez are currently in the Court's vault, and their contents are described in an Order of the Court issued on May 11, 1994 (docket No. 73).

3. On the night of October 29, 1992, defendant George Kenny Buck extracted a videocassette from the apartment of Mr. Liston Donneal Boschette III, without the knowledge of the people present that night. The videocassette extracted has been identified as videocassette No. 4, which is kept in the Court's vault. Present at Liston Boschette III's apartment that night were: Evelyn Torres, George Kenny Buck, Rosaura González Rucci, and Rodesia Picardo.

---

2. The Court is unable to reconcile Mr. Buck's deposition with the Statement Under Penalty of Perjury submitted in support of his opposition to Ms. Torres' motion for summary judgment. During his deposition, Mr. Buck stated that he fooled everyone present at Mr. Boschette III's apartment on October 29, 1992, into believing he had destroyed the videocassette by unwinding a blank tape. He then removed the videocassette by concealing it inside his shirt. Deposition of George Kenny Buck at 43–44.

4. Ms. Torres had never met Mr. Buck prior to the evening of October 29, 1992.

5. On February 18, 1993, Ms. Torres filed a police report against Mr. Buck for taking the videotape on October 29, 1992. Ms. Rosaura Rucci was named as a witness in that report.

6. The District Attorney in charge of Ms. Torres' complaint declined to prosecute Mr. Buck.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988).

■ Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack*, 871 F.2d at 181.

■ The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

## IV. MALICIOUS PROSECUTION

■ The tort of malicious prosecution bears considerable resemblance to the torts of false imprisonment, illegal detention and defamation. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 119, at 885 (5th ed. 1984). However, these causes of action have different origins and remain distinct to the present. For example, the earliest precursor of the modern tort of malicious prosecution—a writ of conspiracy aimed at combinations to abuse legal process—originated in the king's court, while the tort of defamation was inherited from the ecclesiastical courts. William L. Prosser, Law of Torts § 113, at 852 (3d ed. 1964). The tort of malicious prosecution primarily protects the interest in freedom from unjustifiable litigation—protection of reputation, property, or liberty interests is secondary. *Dellums v. Powell*, 566 F.2d 167, 192 (D.C.Cir.1977) (quoting 1 F. Harper & F. James, The Law of Torts § 4.6, at 301 (1956)). In contrast, the torts of defamation and false imprisonment are principally aimed at protecting a litigant's interest in his reputation and liberty, respectively.

■ Puerto Rico's Civil Code contains no specific provision relating to malicious prosecution. Article 1802 of the Civil Code simply states that a "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R.Laws Ann. tit. 31 § 5141 (1991). Puerto Rico courts have developed a common law of malicious prosecution fashioned after the Restatement Second

definition within the context of the Code's negligence provision. *Torres v. Superintendent of Police of Puerto Rico*, 893 F.2d 404, 409 (1st Cir.1990). Just as in common law jurisdictions, there are four elements to malicious prosecution under Puerto Rico law: i) malicious institution or instigation of criminal proceedings against the claimant; ii) without probable cause; iii) which ended favorably for the claimant; and iv) whereby the claimant suffered damages. *Raldiris v. Levitt & Sons*, 103 P.R.Dec. 778, 781 (1975).

As to the first element, Section 654 of the Restatement (Second) of Torts states:

> Criminal proceedings are instituted when
>
> (a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or
>
> (b) without the issuance of process an indictment is returned or an information filed against him; or
>
> (c) he is lawfully arrested on a criminal charge.
>
> Restatement (Second) of Torts § 654 (1977).

■ That Ms. Torres spoke with the police is insufficient to establish a claim for malicious prosecution. "The making of the charge is not actionable, however, unless a prosecution actually results from it ..." Restatement (Second) of Torts § 653, cmt. c (1977); *see also* Keeton et al., *supra*, § 119 at 871 ("It is not enough that a mere complaint has been made to the proper authorities for the purpose of setting prosecution in motion, where no official action ever has been taken, or that evidence has been presented to a grand jury which refuses to indict"). For example, in *Stromberg v. Costello*, 456 F.Supp. 848 (D.Mass.1978), the defendant twice applied for criminal complaints against the plaintiff. The applications were denied and the defendant appealed the denials. *Id.* at 850. The District Court held the complaint did not state a claim for malicious prosecution because no proceeding actually resulted from the applications. *Id.; see also Dellums*, 566 F.2d at 192 ("courts have held

that a private citizen who knowingly and maliciously presents false information to an official, but who fails thereby to cause process to issue, cannot be held liable for malicious prosecution"); *Melvin v. Pence*, 130 F.2d 423, 425 (D.C.Cir.1942) (it is an accepted rule that unsuccessful efforts to secure the institution of proceedings, however malicious or unfounded, are not actionable as malicious prosecution).

The Supreme Court of Puerto Rico recognized a similar rule in *García Calderón v. Galiñanes Hermanos*, 83 P.R.Dec. 318, 319 (P.R.1961). *Garcá Calderón* involved an action for illegal detention. The Court explained that an action for damages for illegal detention does not require that the claimant be incarcerated. Rather, any form of detention or effective restraint of liberty, without consent, for an appreciable period of time, is sufficient. *Id.* at 319. The Court went on to distinguish the tort of illegal detention from the tort of malicious prosecution, stating that illegal detention, unlike the tort of malicious prosecution, does not require the commencement of judicial proceedings that culminate in arrest. *Id.* at 319, n. 1. *García–Calderón* indicates that, under Puerto Rico law, mere complaints to the police are insufficient to establish a claim for malicious prosecution if they do not result in the arrest and prosecution of the claimant.

Common law jurisdictions, in analyzing the torts of malicious prosecution and false arrest or imprisonment, have made similar distinctions. This is not remarkable given that both the civil code and the common law are grounded in reason and shared notions of justice. The United States Supreme Court distinguished these torts in *Heck v. Humphrey*, —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), a case involving a Section 1983 claim. The claimant, a convicted criminal defendant, alleged that Indiana state police investigators had engaged in an unreasonable investigation leading to his arrest, had knowingly destroyed exculpatory evidence, and had caused an illegal voice identification procedure to be used at his trial; he sought compensatory and punitive monetary damages. *Heck*, —— U.S. at ——, 114 S.Ct. at 2368. At issue before the Court was the

proper relation between Section 1983 and *habeas corpus* proceedings. The Supreme Court held that a convicted criminal defendant may only bring a Section 1983 action if he successfully proves the unlawfulness of his conviction or confinement. *Heck,* —— U.S. at ——, 114 S.Ct. at 2370. In explaining its holding, the Supreme Court distinguished the common law torts of malicious prosecution and false arrest or imprisonment. The court concluded that the common law tort of malicious prosecution provided the closest analogy to the claim at issue since "unlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process." (emphasis added). *Heck,* —— U.S. at ——, 114 S.Ct. at 2371. Since one of the elements of malicious prosecution is termination of criminal proceedings in favor of the claimant, it followed that a convicted criminal defendant could only bring a Section 1983 action if he successfully proved the unlawfulness of his conviction or confinement.

The United States Court of Appeals for the First Circuit has had occasion to draw on the teachings of the United States Supreme Court in *Heck.* The First Circuit distinguished the torts of malicious prosecution and false arrest in *Calero–Colón, et al. v. Betancourt–Lebrón,* 68 F.3d 1 (1995), a case also arising under 42 U.S.C. § 1983. The claimants, who were acquitted after trial, accused a police officer of conspiring with a confidential informant to knowingly present false information to Puerto Rico authorities in order to obtain a warrant to arrest the claimants. The court stated: "The critical inquiry that distinguishes malicious prosecution from false arrest in the present context is whether the arrests were made pursuant to a warrant." *Calero–Colón,* 68 F.3d at 4. The First Circuit noted that an arrest warrant constitutes legal process, and stated that "it is the tort of malicious prosecution that permits damages for confinement pursuant to legal process" (emphasis added). *Calero–Colón,* 68 F.3d at 4. *Heck* and *Calero–Colón* demonstrate that a citizen's statements to the police are insufficient to support a claim for malicious prosecution inasmuch as such statements are not "legal process."

■ Mr. Buck's claim against Ms. Torres falls squarely within the reasoning of these civil code and common law cases. Mr. Buck has never been criminally prosecuted for removing videocassette No. 4 from Mr. Boschette III's apartment or for any other conduct relating to events surrounding the videotapes. It is undisputed that the district attorney who investigated Ms. Torres' accusations decided not to file criminal charges. Therefore, Mr. Buck will be unable to prove an essential element of a malicious prosecution action: that the defendant successfully instituted or instigated criminal proceedings against him.

■ The tort of malicious prosecution is disfavored by the courts because it discourages citizens from cooperating in the prosecution of crimes. *Raldiris, supra* at 781. "It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement." *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). It would be unwise to expand this tort so as to hold private citizens who merely report facts that may warrant criminal charges to the proper authorities liable for damages occasioned by ensuing investigations. Such liability would unacceptably hinder current efforts to deter criminality by enlisting the assistance of the citizenry. Mr. Buck's opposition to Ms. Torres' motion for summary judgment fails because he has not and cannot allege sufficient facts which if proven would sustain a verdict in his favor.

## V. CONSPIRACY TO HARASS MR. BUCK AND INJURE HIM

■ Mr. Buck alleges that Mr. and Mrs. Boschette, Jr. conspired with Mr. Boschette III, Ms. Rosaura González Rucci and Ms. Evelyn Torres to harass him and alter his peace. He alleges that the police report filed by Ms. Torres and this civil case are part of a broader scheme designed to damage his reputation. Mr. Buck adduces little evidence to support his conspiracy theory. As to Ms. Torres' role in the conspiracy, he notes that Ms. Torres' report was not filed until several months after October 29, 1992, the date on

which the events she complained of occurred, and that Mr. Boschette returned to Puerto Rico in mid–January of 1993. According to Mr. Buck, after reviewing this evidence, "one can only conclude that it was joined party Boschette III who, upon his return to Puerto Rico in mid–January 1993, urged and instigated Ms. Torres to file the criminal complaint." Defendant's Opposition at 5. Mr. Buck also submitted a statement indicating he believes that both the police report filed by Ms. Torres on February 19, 1993, and the instant case were filed at the urging of Mr. Boschette III.

Federal Rule of Civil Procedure 56(e) states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Mr. Buck's sworn statement that he believes that both the police report filed by Ms. Torres on February 19, 1993, and the instant case were filed at the urging of Mr. Boschette III cannot support his conspiracy theory inasmuch as he has no personal knowledge regarding the alleged conspiracy and is not competent to testify regarding this matter at trial. Conversely, the sworn statements submitted by Ms. Torres relate to the personal knowledge of the affiants. Mr. Boschette III affirms that he never discussed the police report with Ms. Torres nor encouraged her to file it and that he never conspired with his parents to file a police report against Mr. Buck. Ms. Torres states that she alone decided to file the police report against Mr. Buck and this decision was not influenced, consulted or encouraged by any other person. The statements of Mr. and Mrs. Liston Boschette, Jr. indicate that neither of them ever discussed with Ms. Torres their desire to stop the harassing phone calls, nor did they ever discuss their personal or legal matters with her.

Therefore, the only evidence to support Mr. Buck's conspiracy allegation with regard to Ms. Torres is the fact that Mr. Boschette III returned to Puerto Rico between October 29, 1992, when Mr. Buck removed the videotape from the apartment, and February 19, 1993, when Ms. Torres filed the police report.

While the defendant is entitled to all favorable inferences, "he is not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture." *Manganaro v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir.1962). The Court finds the mere date of Mr. Boschette III's return to Puerto Rico evidence too flimsy for a reasonable jury to find Ms. Torres guilty of a conspiracy to harass defendant and alter his peace of mind through the filing of the police report and this civil case.

## VI. CONCLUSION

Mr. Buck cannot state a claim for malicious prosecution since criminal proceedings were never initiated against him as a result of Ms. Torres' police report. Mr. Buck's allegations of conspiracy are based on mere speculation and cannot countervail the affidavits of the parties involved affirming that their actions were taken independently and without any concerted purpose of harassing Mr. Buck and damaging his reputation. Therefore, the Court will enter a judgment dismissing the Mr. Buck's complaint against Evelyn Torres Irizarry.

IT IS SO ORDERED AND ADJUDGED.