The OAKS GALLERY AND COUNTRY STORE–WINONA, INC., et al., Appellants,

v.

LEE ENTERPRISES, INC., d/b/a Winona Daily News, et al., Respondents.

No. C8-00-8.

Court of Appeals of Minnesota.

July 11, 2000.

Review Denied Sept. 13, 2000.

Stewart C. Loper, Loper & Seymour, St. Paul, MN (for appellants).

Mark R. Anfinson, Minneapolis, MN; and Clifford M. Greene, Kristen N. Anderson, Greene Espel, P.L.L.P., Minneapolis, MN (for respondents).

Considered and decided by TOUSSAINT, Chief Judge, G. BARRY ANDERSON, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge.*

On appeal from summary judgment, Oaks Gallery and Terry and Martha Sue Duggins challenge the district court's determination that the newspaper and newspaper reporter did not defame them as a matter of law. They contend genuine issues of material fact exist as to whether an article incorrectly attributed the nonpayment of delinquent real estate taxes to them, causing harm to their business. We affirm.

## FACTS

In spring of 1986, EMD Construction Company (EMD) purchased the property

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

at issue, located at 425 Cottonwood Drive in Winona. EMD is a Kansas corporation, whose sole shareholder was appellant Terry Dugginss mother, Eva Murphy Duggins. Terry Duggin's has served as president of EMD since approximately 1984. The warranty deed filed with the Winona County Auditor indicated that the property tax statement should be sent to EMD in care of Terry Duggins; throughout the years, he provided the auditor with various Twin Cities addresses for EMD.

Oaks Gallery, a gift and craft store, began leasing space from EMD shortly after EMD purchased the property. It displayed the work of many crafters, who paid Oaks Gallery a monthly fee and a 12 percent commission on sales of their crafts. The Martha Sue Duggins Partnership, a South Dakota limited partnership whose partners were Terry Duggins and his wife, Martha Sue Duggins, owned the Oaks Gallery corporation. Oaks Gallery did not own any shares of EMD or vice versa, and the terms of the lease provided that EMD was required to pay all property taxes.

EMD encountered financial problems after remodeling the building in 1986, when mechanics' liens were filed on the property because the contractor allegedly failed to pay some subcontractors and suppliers. Terry Duggins explained that although he was president of EMD, his mother and her attorneys instructed him not to make tax payments after the mechanics liens' were filed. The county began forfeiture proceedings and obtained a judgment for delinquent taxes in May 1987. In 1989, before the redemption period expired, EMD filed for bankruptcy protection, which stayed the forfeiture proceedings.

After his mother's death, Terry Duggins and his sister each inherited a 50 percent share of EMD; by 1992, Terry Duggins had acquired his sister's share and he owned 100 percent of EMD. At some point, another Kansas corporation, CPJ Enterprises (CPJ), acquired an ownership interest in the property through a contract for deed, but never acquired title. Martha Sue Duggins was initially the sole shareholder of CPJ, but Terry and Martha Sue Duggins's limited partnership acquired the CPJ stock later.

Since its lease began, Oaks Gallery consistently paid the rent when due, which ranged from $2,000 to $3,700 per month. Oaks Gallery initially made the payments to EMD, but at some point began making payments to CPJ.

The bankruptcy trustee eventually abandoned the property. EMD resumed legal control, but still failed to pay property taxes. The county began forfeiture proceedings again, and the three-year redemption period expired in 1995. The county issued the certificate of forfeiture on August 9, 1995, and Oaks Gallery signed a new lease with the county effective August 1, 1995, for monthly rental payments of $2,450.

While preparing an article on tax-delinquent properties, a reporter from the Winona Daily News spoke to the Winona County Auditor, who provided him with information about the delinquencies described in the article. He also interviewed appellants and their attorney, who told him that Oaks Gallery did not own the property or owe taxes. The reporter agreed that this was technically true, but felt the ownership relationship was more complicated. Terry Duggins asserts that although the reporter agreed not to include the names of the Dugginses or Oaks Gallery in the article, he nonetheless did so.

On October 20, 1995, the Winona Daily News published the article about real estate tax forfeitures titled "The tax collector cometh," with the subtitle "Oaks Gallery is among 13 tax-delinquent parcels soon to go on the block" Appellants contend that

the article defamed them by giving the false impression that they, not EMD, failed to pay the property taxes.

On the day the article appeared Terry Duggins demanded that the editor publish a retraction. The editor published a clarification on October 21, 1995, and a formal retraction on November 9, 1995, making it clear that Oaks Gallery was not the owner of the tax-delinquent property.

Terry Duggins asserts that the article had an immediate impact on the business of Oaks Gallery. On the day the article appeared a number of crafters called to cancel their display contracts. At the beginning of October 1995, the Oaks Gallery had contracts with 257 crafters; by January 1996, 88 had terminated their contracts. The business experienced a significant drop in customers during the end-of-the-year period that was typically the busiest.

On December 19, 1995, the county conducted a tax-forfeiture sale of the EMD property with a minimum bid of $150,000. Mary Sue Duggins bid $151,000 initially, but the county advised her that because she was an interested party, it would not sell the property to her for less than the total amount of taxes, penalties, and interest, which amounted to $191,000. Another purchaser bought the property. The Oaks Gallery closed after its lease ended, due to the financial impact of crafters terminating their contracts and the decline in the number of retail customers.

Appellants then sued respondents for defamation. The district court granted summary judgment for respondents. This appeal followed.

## ISSUE

Is there a genuine issue of material fact as to whether the "gist or sting" of the statements in the article were true?

## ANALYSIS

In considering an appeal from summary judgment, an appellate court will review the record to determine whether any genuine issues of material fact exist and whether the district court erred as a matter of law. *Offerdahl v. University of Minn. Hosps. Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The evidence will be considered in the light most favorable to the nonmoving party. *Id.*

A statement is defamatory if it is communicated to someone other than the plaintiff, it [is] false, and it * * * tend[s] to harm the plaintiff's reputation and to lower him in the estimation of the community.

*Stuempges v. Parke, Davis Co.*, 297 N.W.2d 252, 255 (Minn.1980). Generally, "the truth or falsity of a statement is inherently within the province of the jury." *Lewis v. Equitable Life Assurance Socy.*, 389 N.W.2d 876, 889 (Minn.1986). If, however, the underlying facts are not in dispute, the question of whether the statements are substantially accurate is one of law for the district court to determine. *Jadwin v. Minneapolis Star Tribune Co.*, 390 N.W.2d 437, 441 (Minn.App.1986).

"[T]rue statements, however disparaging, are not actionable." *Stuempges*, 297 N.W.2d at 255. The truth must go not only to the accuracy of the statement, but its underlying implications as well. *Lewis*, 389 N.W.2d at 889. "Inaccuracies of expression or details" are not significant if the statement is "true in substance." *Jadwin*, 390 N.W.2d at 441.

A statement is substantially accurate if its gist or sting is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced.

*Id.* (quotation omitted).

Appellants contend that a genuine issue of material fact existed as to whether the article was false because it attributed the nonpayment of taxes to Oaks Gallery

and the Dugginses, even though EMD, not they, owed the taxes. While the parties argue as to whether the article is "substantially accurate," we conclude that the more relevant inquiry is whether the "gist or sting" of the article was true. The learned trial court judge ruled that:

> The precise truth in this case is that the Dugginses failed to pay real estate taxes as owners of EMD and CPJ and not as owners of Oaks Gallery.

The court noted that the article mentioned Terry and Martha Sue Duggins, but clearly indicated in several places that EMD Construction was the owner of the parcel. It concluded that "[g]iven the totality of the article and the undisputed facts regarding the corporate ownership, the plaintiffs' case should not go forward."

Appellants contend that to conclude the "gist or sting" was true disregards the reality of the corporate entities because only EMD was responsible for the property taxes. *See Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn.1979) (discussing factors to consider in disregarding corporate entity). But the proper question here is not whether to pierce the corporate veil for liability purposes, an issue not present in the case, but whether an "accurate" version of the article would have had the same gist or sting. Such a version would have showed that EMD owned the property and owed taxes, that Oaks Gallery was a lessee and did not owe taxes, that a partnership consisting of Terry and Martha Sue Duggins owned Oaks Gallery and that Terry Duggins was first president and then full owner of EMD, and that CPJ, which had some ownership interest in EMD, was also owned by the partnership of Terry and Martha Sue Duggins.

It is impossible to escape the fact of the common ownership. Thus, while Oaks Gallery did not owe the taxes, Terry and Martha Sue Duggins were the sole partners in the corporation that owned Oaks Gallery, as well as CPJ (which had an undetermined interest in EMD), and Terry Duggins was first president and, by 1992, the full owner of EMD. We agree with the district court that because the "gist or sting" of the article is true, respondents are entitled to summary judgment as a matter of law.[1]

Appellants move to strike the portion of respondents' appendix containing "matters not in the record below. An appellate court may not consider matters outside the record on appeal, and may not consider matters not produced and received in evidence below." *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn.1988). We grant appellants' motion.

## DECISION

The decision of the district court granting summary judgment to respondents is affirmed.

**Affirmed; motion granted.**

---

1. In light of this decision, it is unnecessary to reach other issues concerning defamation.