**Jeannie STEAD–BOWERS, Appellant,**

v.

**Sandra LANGLEY, et al., Respondents,**

**Mark Elias, Susan Morris, Respondents,**

**John Does 1–10, Defendants.**

No. C6–01–423.

Court of Appeals of Minnesota.

Dec. 4, 2001.

Jeffrey M. Ellis, Jeffrey M. Ellis, PLLC, Minneapolis, for appellant.

Pierre N. Regnier, Joseph E. Flynn, Jardine, Logan & O'Brien, P.L.L.P., St. Paul; and Mark W. Kelly, Kelly Law Offices, Excelsior, for respondents Sandra Langley and City of Greenwood.

Paul D. Reuvers, Iverson Reuvers, LLC, Bloomington, for respondent Mark Elias.

Thomas S. McEachron, James A. Jardine, Votel, Anderson & McEachron, St. Paul, for respondent Susan Morris.

Considered and decided by SCHUMACHER, Presiding Judge, KLAPHAKE, Judge, and PETERSON, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant Jeannie Stead–Bowers brought a claim for malicious prosecution against respondents Sandra Langley, Mark Elias, Susan Morris, and the City of Greenwood, as well as John Does 1–10. She subsequently sought to amend her complaint to state claims for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Stead–Bowers challenges the district court's dismissal of her malicious prosecution action and the denial of her motion to amend. She contends that malicious prosecution extends to actions where there was only a criminal investigation. She also contends that she properly stated claims for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. We affirm.

## FACTS

Stead–Bowers is a member of the Greenwood City Council. As a council member, she was appointed "dock master" and made responsible for the maintenance and repair of the city's public docks. She generally pays for supplies relevant to these responsibilities herself. The city council also authorized her to hire Aaron Maenke as an assistant.

In November 1998, she was re-elected to the city council. During this time, Stead–Bowers claims that Langley, Elias, Morris, and the city entered into a scheme to remove her from office. Stead–Bowers alleges that during the 1998 election, Langley approached her several times and stated that she should seek reimbursement from the city for expenses she incurred related to her dock duties. She subsequently submitted expense receipts for reimbursement to the city council.

Thereafter, she claims Langley, Elias, Morris, and the city caused a document to be prepared containing Stead–Bowers's forged signature in which Stead–Bowers purported to declare, subject to penalties of perjury, that her reimbursement request was just and correct. She further claims that Langley, Elias, Morris, and the city then used the forged document to induce Maenke to send a letter signed by himself and Morris to the chief of police and the city council, stating that Stead–Bowers overcharged the city when filing for reimbursement. The Hennepin County Sheriff's Department conducted a criminal investigation of the claim and found it to be lacking in factual support. The investigation was consequently closed.

Stead–Bowers thereafter brought an action, alleging malicious prosecution against Langley, Elias, Morris, the city, and John Does 1–10. Langley, Elias, Morris, and the city then brought a Rule 12 motion to dismiss for failure to state a claim. In response, Stead–Bowers filed a motion to amend her complaint to add claims for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. The district court granted the motion to dismiss and denied Stead–Bowers's motion to amend.

### ISSUES

1. Did the district court err by holding that Stead–Bowers failed to state a claim for malicious prosecution?

2. Did the district court abuse its discretion by denying Stead–Bowers leave to amend her complaint?

### ANALYSIS

1. Stead–Bowers contends that the district court erred in granting Langley, Elias, Morris, and the city's Rule 12 motion to dismiss for failure to state a claim upon which relief can be granted. The district court held that in order to maintain a claim for malicious prosecution, Stead–Bowers must show that she was charged, indicted, or arrested. Stead–Bowers advocates that such a showing is not necessary.

When reviewing a dismissal for failure to state a claim upon which relief can be granted, an appellate court must only determine whether the complaint sets forth a legally sufficient claim for relief. *Geldert v. American Nat'l Bank*, 506 N.W.2d 22, 25 (Minn.App.1993), *review denied* (Minn. Nov. 16, 1993). It is immaterial whether the plaintiff can prove the facts alleged in the complaint. *Juster Steel v. Carlson Cos.*, 366 N.W.2d 616, 619 (Minn.App.1985). A complaint should only be dismissed for failure to state a claim if it appears to a certainty that no facts consistent with the pleading exist that support granting the relief demanded. *Brakke v. Hilgers*, 374 N.W.2d 553, 555 (Minn.App.1985). The facts set forth in the complaint must be accepted as true, and the plaintiff is entitled to have the benefit of all favorable and reasonable inferences. *Pullar v. Independent Sch. Dist.*, 582 N.W.2d 273, 275–76 (Minn.App. 1998). The appellate court reviews de novo the claim's legal sufficiency. *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997).

This court has previously stated that the elements of malicious prosecution are

(1) the suit must be brought without probable cause and with no reasonable ground on which to base a belief that the plaintiff would prevail on the merits; (2) the suit must be instituted and prosecuted with malicious intent; and (3) the suit must ultimately terminate in favor of the defendant.

*Jordan v. Lamb*, 392 N.W.2d 607, 609 (Minn.App.1986) (citing *First Nat'l Bank*

v. Marquette Nat'l Bank, 482 F.Supp. 514, 522–23 (D.Minn.1979)), review denied (Minn. Oct. 29, 1986). The question of whether the initiation of a criminal investigation alone is sufficient to constitute the basis for a malicious prosecution claim, however, is an issue of first impression in Minnesota. The Minnesota Supreme Court has stated that an action for malicious prosecution

> has always been carefully circumscribed, and not favored in law, the reason being that "public policy favors * * * prosecutions and affords such protection of another in good faith and on reasonable grounds as is essential to public justice * * *." In prior malicious prosecution actions we reiterated, in dicta, our longstanding public policy of not discouraging criminal investigations.
>
> The public policy limiting malicious prosecution actions applies with especial force to actions which would make witnesses or victims liable for their negligence in assisting criminal investigations or prosecutions. Persons having knowledge of crimes, as a fundamental duty of citizenship, are encouraged, if not obligated, to report and assist in investigation and prosecution of these crimes. We take judicial notice of the fact that many persons are regrettably reluctant to "become involved" in the reporting and investigation of crimes. A threat of an action—which does not include an element of maliciousness—would serve to further discourage citizen participation in criminal investigations and prosecutions.

Lundberg v. Scoggins, 335 N.W.2d 235, 236 (Minn.1983) (quoting 54 C.J.S. Malicious Prosecution § 3 (1948)) (citing Allen v. Osco Drug, Inc., 265 N.W.2d 639, 642 (Minn.1978)); see also Shafer v. Hertzig, 92 Minn. 171, 175, 99 N.W. 796, 798 (1904) ("It is not the policy of the law to discourage investigation into the sources of crime, or to impose such difficulties in the way of judicial proceedings therefor as to constitute barriers to the administration of justice and discourage the institution of necessary criminal prosecutions"); Smith v. Munch, 65 Minn. 256, 259–260, 68 N.W. 19, 20–21 (1896). We find this policy consideration persuasive.

We also find commentary on the issue to be persuasive. The Second Restatement of Torts states that the triggering conduct for the tort of malicious prosecution is the initiation of a criminal proceeding. Restatement (Second) of Torts § 653 (1977). Criminal proceedings are described as follows:

> (1) The term "criminal proceedings" includes any proceeding in which a government seeks to prosecute a person for an offense and to impose upon him a penalty of a criminal character.
>
> (2) Criminal proceedings are instituted when
>
>> (a) process is issued for the purpose of bringing the accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or
>>
>> (b) without the issuance of process an indictment is returned or an information filed against him; or
>>
>> (c) he is lawfully arrested on a criminal charge.

Restatement (Second) of Torts § 654 (1977). Additionally, the comments state that

> formal action must be taken by an official or a tribunal before there can be that institution of criminal proceedings which the plaintiff must prove in order to make his accuser liable * * *. The mere fact that a person has submitted to

a magistrate an affidavit for the purpose of securing a warrant for another's arrest or a summons for him to appear at a hearing, does not justify a finding that he has initiated criminal proceedings against the other. The proceedings are not instituted unless and until the warrant or summons is issued.

Restatement (Second) of Torts § 654 cmt. d (1977).

Keeton also comments on what constitutes the initiation of a criminal proceeding:

> The proceeding must, however, have been commenced. It is not enough that a mere complaint has been made to the proper authorities for the purpose of setting prosecution in motion, where no official action ever has been taken, or that evidence has been presented to a grand jury which refuses to indict. On the other hand, it usually is held to be sufficient that a warrant has been issued for the plaintiff's arrest, although it never has been served. The initial step is of course a matter of the procedure of the particular jurisdiction; and where prosecution is begun by an indictment, or an information filed by the prosecuting attorney, it seems clear that this should be enough, since it constitutes official action and sets the law in motion.

W. Page Keeton et al., *Prosser and Keeton on Torts* 871–72 (5th ed.1984) (citations omitted); *see also* Fowler V. Harper & Fleming, James, Jr., *The Law of Torts* § 4.3 (3d ed. 1996) ("[O]ne who makes a complaint informally or under oath cannot be liable for malicious prosecution if no action is taken by the officers of the law pursuant thereto. On the other hand, the proceeding is instituted the minute some official act has been taken to apprehend the other").

In addition to the strong policy consideration of favoring criminal investigations and the authoritative commentary, many other jurisdictions require the initiation of an action more formal than a criminal investigation in order for a malicious prosecution action to be triggered. *See Stromberg v. Costello*, 456 F.Supp. 848, 850 (D.Mass.1978) (stating that complaint does not state a claim for malicious prosecution, even though it alleged defendant twice applied for criminal complaints against plaintiff, when it did not state any proceeding actually resulted); *Carson v. Lewis*, 35 F.Supp.2d 250, 262–63 (E.D.N.Y.1999) (arrest that occurred prior to arrestee's arraignment and without warrant, and thus, was not pursuant to legal process, could not serve as predicate deprivation of liberty for purposes of malicious prosecution claim under New York law); *Boschette v. Buck*, 916 F.Supp. 91, 96 (D.Puerto Rico 1996) (person who allegedly stole videotape was not subjected to malicious prosecution even though owner filed complaint with police where district attorney who reviewed complaint declined to prosecute); *Boschette v. Buck*, 914 F.Supp. 769, 774–75 (D.Puerto Rico 1995) (stating that speaking to the police is insufficient to establish claim for malicious prosecution when plaintiff was never criminally prosecuted); *Walker v. Bishop*, 169 Ga.App. 236, 312 S.E.2d 349, 352 (1983) (striking employee could not maintain malicious prosecution claim arising out of his arrest where there was no evidence that criminal charges were brought before committing court, grand jury, or other tribunal); *Yoch v. City of Cedar Rapids*, 353 N.W.2d 95, 101 (Iowa Ct.App.1984) (no cause of action arises for malicious prosecution unless there has been either arrest, seizure of property, or special injury sustained that would not necessarily result in all suits prosecuted to recover for like causes of action); *Arena v. K Mart Corp.*, 439 So.2d 528, 531 (La.Ct.App.1983) (no cause of ac-

tion for malicious prosecution where department store neither had consumer arrested nor filed charges against him, but merely took precaution of having police come to scene); *Cuddy v. Kueker,* 7 Mass. App.Ct. 896, 387 N.E.2d 213, 214 (1979) (stating that no prosecution was ever instituted against plaintiff because no criminal complaint was ever signed by defendant); *Bassinov v. Finkle,* 261 N.C. 109, 134 S.E.2d 130, 131 (1964) (action for malicious prosecution must be predicated on valid warrant); *Long v. Lewis,* 318 N.J.Super. 449, 723 A.2d 1238, 1240 (1999) (action for malicious prosecution, where prior criminal action is not involved, requires proof defendants instituted proceeding that is adjudicatory in nature); *Covert v. Westchester County,* 153 Misc.2d 733, 582 N.Y.S.2d 937, 938 (N.Y.Sup.Ct.1992) (prior judicial proceeding is required for malicious prosecution and can be as formal as indictment by grand jury or just evaluation by magistrate of affidavit supporting application for arrest warrant); *Hitchcock v. Cullerton,* 82 N.C.App. 296, 346 S.E.2d 215, 217 (1986) (action for malicious prosecution must be based on valid process, and warrant must allege all elements of crime charged); *Hawley v. Ritley,* 35 Ohio St.3d 157, 519 N.E.2d 390, 394 (1988) (record did not show arrest of person or seizure of property necessary for malicious prosecution action); *Miessner v. All Dakota Ins. Assocs., Inc.,* 515 N.W.2d 198, 201 (S.D. 1994) (no basis for malicious prosecution where, although arrest warrant had been requested, criminal investigation was terminated before warrant had been issued).

We decline to extend the scope of the malicious prosecution tort as advocated by Stead–Bowers. Based on the above policy considerations and sources of law, we find that a distinct line can be drawn between what actions trigger the malicious prosecution tort and what actions do not. We conclude that some formal legal action

must be instituted. Actions such as a criminal charge or indictment would meet this requirement. The initiation of a criminal investigation alone without further proceedings falls short. The district court did not err in dismissing Stead–Bowers's claim.

2. Stead–Bowers also contends that the district court erred in denying her motion for leave to amend her complaint to state claims for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. "The decision to allow a party to amend its complaint after responsive pleading has been made lies within the sound discretion of the [district] court." *Wessin v. Archives Corp.,* 592 N.W.2d 460, 468 (Minn.1999) (citation omitted). Its ruling "will not be reversed absent a clear abuse of discretion." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). The district court should liberally grant motions to amend when justice requires and doing so will not result in prejudice to the adverse party. *Id.;* Minn. R. Civ. P. 15.01.

A court, however, may properly deny such amendments "when the additional alleged claim cannot be maintained." *Hunt v. Univ. of Minn.,* 465 N.W.2d 88, 95 (Minn.App.1991); *see also Bib Audio–Video Prods. v. Herold Mktg. Assocs.,* 517 N.W.2d 68, 73 (Minn.App.1994) (citation omitted) ("denial of a motion to amend is proper when the movant fails to establish evidence to support the movant's claims").

To establish a defamation claim, plaintiff must show (1) a statement; (2) communicated by the defendant to someone other than the plaintiff; (3) that is false; and (4) that harmed the plaintiff's reputation. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980). Plaintiff must satisfy all four elements to succeed in a defamation action. *Id.* A

plaintiff who is a public figure must show that defendant's statements were defamatory and demonstrate, by clear and convincing evidence, that the defendant made the statements with actual malice. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964).

Stead–Bowers does not present any evidence showing how the statements harmed her reputation. Additionally, Stead–Bowers admitted that she mistakenly submitted at least one check for reimbursement that was for personal use, which indicates at least some truth to the allegations in Maenke's letter. *See The Oaks Gallery v. Lee Enterprises, Inc.,* 613 N.W.2d 800, 803 (Minn.App.2000) (no defamation where "gist" or "sting" is true), *review denied* (Minn. Sept. 13, 2000).

 Further, because Stead–Bowers, at the time of the events at issue was either running for public office or held public office, she is considered a public figure. Where a plaintiff in a defamation action is a public figure, actual malice must be shown in addition to the other defamation elements. *Sullivan,* 376 U.S. at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d 686. A person acts with "actual malice" when he or she publishes a statement knowing that it is false or with reckless disregard for whether it was false or not. *Id.* Although the concept of "reckless disregard" cannot be fully encompassed in one infallible definition, it is clear that the statements must have been published with "an awareness of its probable falsity," *Connelly v. Northwest Publications, Inc.,* 448 N.W.2d 901, 903 (Minn.App.1989), *review denied* (Minn. Feb. 21, 1990), or with serious doubts as to their truth. *Hirman v. Rogers,* 257 N.W.2d 563, 566 (Minn.1977). "The burden of proving actual malice is upon the one alleging defamatory statements and it

must be proved with convincing clarity." *Id.* at 566 (citation omitted).

 Here, the record indicates that the statements contained in the letter sent to the city by Maenke and Morris were made not with awareness of probable falsity, but with the belief that they were likely true. This is supported by the fact that Stead Bowers wrongfully submitted at least one check for reimbursement. Additionally, there is no evidence in the record connecting any statements contained in the allegedly forged document to Langely, Elias, Morris, or the city. Stead–Bowers has failed to present evidence of actual malice.

Moreover, we note that Stead–Bowers failed to specifically plead the alleged defamatory statements. *See American Book Co. v. Kingdom Publishing Co.,* 71 Minn. 363, 366, 73 N.W. 1089, 1090 (1898) (plaintiff in libel action may not merely plead effect or tenor or import of alleged defamatory language, but must plead specific alleged defamatory words). The district court did not abuse its discretion in denying Stead–Bowers leave to amend her complaint to include a claim for defamation.

 To establish a claim for intentional infliction of emotional distress, a plaintiff must show: (1) that the complained-of conduct was extreme and outrageous; (2) the conduct was intentional and reckless; (3) it caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 438–39 (Minn.1983). The operation of this tort is limited to cases involving particularly egregious facts. *Id.* at 439. The conduct "must be extreme and outrageous, so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.,* 277 N.W.2d 648, 652–53 n. 3 (Minn.1979) (cita-

tion omitted). The emotional distress must be "so severe that no reasonable man could be expected to endure it." *Hubbard,* 330 N.W.2d at 439 (quoting Restatement (Second) of Torts § 46 cmt j (1965)).

Stead–Bowers argues that the creation of a document with her forged signature, thereby "setting her up" for criminal prosecution, was extreme and outrageous conduct. While such conduct, if true, may be extreme and outrageous, there is no showing by Stead–Bowers that the conduct caused her to suffer severe emotional distress. The district court did not abuse its discretion by denying Stead–Bowers leave to amend her complaint to claim intentional infliction of emotional distress.

To establish a claim for negligent infliction of emotional distress, a plaintiff must ordinarily show she (1) was within a zone of danger of physical impact; (2) reasonably feared for her own safety; and (3) suffered severe emotional distress with attendant physical manifestations. *K.A.C. v. Benson,* 527 N.W.2d 553, 557 (Minn.1995). If a plaintiff cannot show a direct invasion of her rights, such as defamation, malicious prosecution, or other willful, wanton, or malicious conduct, she must demonstrate that she is within a "zone of danger." *Schibursky v. IBM,* 820 F.Supp. 1169, 1184 (D.Minn.1993). To be within the "zone of danger," the plaintiff must show that the defendants "placed her within a zone of danger of physical impact, prompting reasonable safety concerns and causing severe emotional distress and resultant physical injury." *Id.* (citing *Lee v. Metro. Airport Comm'n,* 428 N.W.2d 815, 823 (Minn.App.1988)).

Because we find that Stead–Bowers has not stated a claim for malicious prosecution or defamation, she must show she was within the zone of danger. There is no allegation that she was placed in physical danger. Even if Stead–Bowers had stated

a claim for malicious prosecution and/or defamation, she has not presented any evidence suggesting that she suffered severe emotional distress resulting in physical injury. The district court did not abuse its discretion by denying Stead–Bowers leave to amend her complaint to state a claim for negligent infliction of emotional distress.

## DECISION

There must be the initiation of a formal criminal proceeding such as a charge or indictment in order to maintain a tort action. The district court did not err by holding that Stead Bowers failed to state a claim for malicious prosecution. The district court did not abuse its discretion by denying Stead Bowers leave to amend her complaint.

**Affirmed.**